[No. 2004, December 31, 1917.]
## STATE v. STARR et al.

### SYLLABUS BY THE COURT.

1. It is a general rule of criminal evidence that on the
trial of a person accused of crime proof of a distinct, indepen-
dent offense is inadmissible.          P. 185

2. Generally speaking, evidence of other crimes is com-
petent to prove the specific crime charged when it tends to
establish: (1) Motive; (2) intent; (3) the absence of mistake
or accident; (4) a common scheme or plan embracing the com-
mission of two or more crimes so related to each other that
proof of one tends to establish the other; (5) the identity of
the person charged with the commission of the crime on trial.
                                                P. 185

3. All objections to the admission or exclusion of evidence,
its competency, relevancy or sufficiency, and as to the com-
petency of witnesses and their examination, must be made in
the trial court. They cannot be raised for the first time on
appeal.          P. 188

4. Whether a sheriff is justified in pursuing and arresting,
without warant, one who has been confined in jail and has
broken therefrom, does not depend upon whether the imprison-
ment was legal, but on whether the officer has reasonable
cause to suspect the commission of a felony.          P. 191

5. Where several persons are jointly indicted, they cannot
claim separate trial as a matter of right; this is a matter of
sound discretion, to be exercised by the court with all due
regard and tenderness to prisoners, according to the known
humanity of our criminal jurisprudence; and an order refus-
ing such trial will not be reviewed.          P. 191

State v. Starr, 24 N. M. 180.

6. The granting or denying of a motion for continuance is within the discretion of the trial court, and unless such discretion has been abused to the injury of the defendant, the denial of such motion will not constitute error.     P. 191

7. There was no error in the court having allowed the jury to separate, before the case was submitted to them, in the absence of a showing that accused was prejudiced thereby.
                                    P. 192

8. The limitation of cross-examination is a matter which rests in the sound discretion of the court, and unless there is manifest abuse of such discretion, an appellate court will not reverse the ruling of the trial court.     P. 193

9. No error can be predicated upon the refusal of the trial court to give an instruction when the instructions given by the court on its own motion fully and completely covered every-thing contained in the refused instruction.     P. 193

10. Where upon trial of murder the court in an instruction used the word "may," there was no reversible error, as the same may be interchangeably used with "shall" or "will."
                                    P. 194

11. *Held*, that a fugitive from justice is not a "person traveling" within section 1708, Code 1915, permitting travelers to carry arms.     P. 195

12. In a prosecution for the murder of a sheriff, evidence that the defendants had escaped from jail and had taken from the jailers a pistol, watch, and certain money, and had held up the driver of the automobile which they had procurred, was admissible as showing a motive and defendants' intent to take life if necessary to prevent recapture.     P. 187

13. Such transactions, comprising a common scheme or plan and embracing the commission of two or more offenses, were so related to each other that proof of one tended to establish the other, and evidence thereof was admissible in exception to the general rule.     P. 187

On Rehearing.

14. In a trial for murder, the denial of a continuance on the ground of the physicial condition of a defendant supported

by a physician's certificate that it would be detrimental to defendant's health to go through a trial in view of his temperature, etc., was not an abuse of the trial court's discretion, where such defendant testified as a witness seemingly in full possession of all his faculties, and there was nothing to show that his attorneys were prejudiced in conducting his defense by reason of his physical condition.                    P. 196

15.  To preserve for review error on instructions given or requested instructions refused, the complaining party must have tendered proper instructions and have excepted to the refusal to give them, or, by excepting to instructions, have called the court's attention specifically to the alleged error.
                                                    P. 199

16.  A question not presented to the court in the original hearing on appeal will not be considered on rehearing.
                                                    P. 200

17.  In a trial for the killing of a deputy sheriff, a requested instruction substantially given by the court was erroneous in that it made the fact that it was unknown to any one of the defendants that the deceased was an officer, and that the conduct of deceased toward either of the defendants was threatening, a material element to be considered on the law of self-defense giving to one of the defendants who might have known that deceased was an officer and was attempting to arrest them as fugitives the right to invoke the law of self-defense by reason of the fact that some of the defendants did not know that he was an officer and was attempting to arrest them.
                                                    P. 200

18.  A defendant cannot complain on appeal of the refusal to give an improper instruction.                 P. 201

19.  An appellant cannot complain of an instruction which, although erroneous, is favorable to him.          P. 201

Parker, J., dissenting.

Appeal from District Court, Doña Ana County; Medler, Judge.

Jesse O. Starr and Charles Schmidt were convicted of murder in the second degree, and from the judgment

sentencing them in accordance with the verdict, they appeal.    Affirmed.

STATEMENT OF FACTS.

The appellants, Jesse O. Starr and Charles Schmidt, together with one Francisco Acosta, Cranston, and one Smith, or Dashley, were confined in the Luna county jail at Deming, and while so confined, on the morning of February 20, 1916, after overpowering the jailer and locking him up in a cell, they made their escape, taking with them certain firearms and ammunition which they found in the possession of the jailer or within the jail. They procured an automobile, in which they drove from Deming to a point within a mile and a half of Rincon, where they left the main road and proceeded up an arroyo about three-quarters of a mile, where they stopped to eat a lunch which they had secured on the road. Shortly after stopping at this point they were overtaken by Sheriff Stevens of Luna county, who was accompanied by a posse, who upon reaching the vicinity divided into two parties, one Kelly, a member of the posse, with others, going up the side of a little hill, while Sheriff Stevens, Sevier, and one Tabor followed the tracks of the automobile in which the prisoners had fled around a short turn in the arroyo. Kelly, on arriving at the top of the hill, discovered the fleeing prisoners and called back to the rest of the posse, "Here they are." Kelly testified that when he discovered the prisoners they were armed and apparently ready to fight. He did not remember whether he called upon them to surrender before firing the first shot in the encounter. Very shortly after this shot was fired Stevens and the persons accompanying him came in view of the defendants and Sevier demanded that they throw up their hands. Numerous shots were almost immediately exchanged between the several parties to the encounter, as a result of which Sheriff Stevens was killed, one Cranston, a member of the fleeing party was also killed, and Sevier was seriously wounded, as was also the appellant Starr, who was

shot through the knee. All of the escaped prisoners with the exception of Dashley were shortly apprehended, and the appellants, with Acosta, were indicted at the March term, 1916, of the district court of Doña Ana county, in which county the homicide occurred.

. The first count of the indictment charged the defendants jointly with the murder of Sheriff Dwight B. Stevens. The second count charged that the killing of Sheriff Stevens was by defendant Starr, and that the other defendants were aiding and abetting in the commission of the said crime. The third count charged that the defendants while confined in the county jail of Luna county, conspired together to escape from said jail and did escape therefrom, which escape is a felony under the laws of New Mexico, that while being pursued by the said Stevens, sheriff of Luna county, and his posse, the defendant Starr deliberately and premeditatedly killed the said Stevens with a rifle, and that the other defendants were aiding and abetting in the said murder of Stevens. The defendants were tried at the March term, 1916, of the said district court, and the said Jesse O. Starr was found guilty of murder in the first degree, and the said Charles Schmidt guilty of murder in the second degree, and Francisco Acosta not guilty. From the judgment of the district court sentencing the first two named defendants in accordance with the verdict of the jury, this appeal was taken.

PROSPER SHERRY, and FRANK HERRON, both of Las Cruces, for appellants.

H. L. PATTON, Attorney General, for the State.

OPINION OF THE COURT. .

HANNA, C. J. (after stating the facts as above). The first point urged by counsel for appellants in their brief, is that the court should not have admitted evidence concerning the transactions in and around the Deming jail pertaining to the escape of the prisoners therefrom. It is urged that the transactions referred

to were too remote; that the escape from the jail was completed the moment the prisoners were beyond the jail confines and out of the custody of the officers. This point is argued in connection with eight exceptions to the admission of evidence during the progress of the trial. It appears from the record that one of the prisoners took from the jailers his pistol, watch and $5.00 in money. The admission of the watch and a portion of the money is complained of in this connection. One Snodgrass was called on the telephone immediately after the escape and induced to bring an automobile to the jail, and was directed to bring a certain sum of money for change. Upon arrival at the jail he was held up, and the money was taken from him, and the pistol which he left in the car was subsequently found in the possession of the prisoners. The admission in evidence of testimony pertaining to the larceny of this gun and the money is complained of. Evidence of the facts and circumstances pertaining to the escape is likewise complained of, and is presented for consideration under this point in appellant's brief.

[1, 2] · Counsel for appellants, while not specifically stating their position further than we have indicated, are evidently standing upon the well-known rule that evidence of collateral offenses, when such evidence is offered simply for the purpose of proving the commission of the offenses charged, cannot be received. Wharton's Criminal Evidence (10th Ed.) § 30; Underhill on Criminal Evidence, § 87; 1 Bishop's New Criminal Procedure, § 1120. This rule is not without exceptions. A leading case in which a number of the exceptions are treated is People v. Mollineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, to which is appended a case note in which numerous cases are collected. The rule upon the subject is set out in the case note in the following language:

"It is a general rule of criminal evidence that, on the trial of a person accused of crime, proof of a distinct, independent offense is inadmissible."

As pointed out in the Molineux case, exceptions to the general rule referred to cannot be stated with categorical precision. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish: (1) Motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. In the instant case it is contended by the state that the trial court permitted the introduction of testimony relative to the transactions in and around the jail pertaining to the escape upon the theory that this evidence tended to show a motive for the homicide. It is argued that the appellants conspired together to make their escape, and secured arms and ammunition to prevent their recapture, and, if necessary, to take life in order to prevent being brought back to the jail. In the case of Territory vs. McGinnis, 10 N. M. 269, 61 Pac. 208, objection was made to the introduction of evidence tending to prove that the defendant had participated in an assault upon a railway train. The territorial Supreme Court pointed out that the theory upon which the court permitted this evidence to be given was that it tended to show motive for the subsequent homicide. In the McGinnis case the United States marshal, accompanied by a posse, was in pursuit of persons who were charged with having held up and robbed a passenger train carrying United States mail, and while so in pursuit of such persons came upon the defendant and others; shots being exchanged simultaneously between the members of the posse and the defendant and those with him. As a result of the altercation one Edward Farr was killed and two other members of the posse wounded. The territorial Supreme Court, in ruling upon the objection to the introduction of evidence to prove that the defendant had participated in the assault upon the railway train, said:

"Where there is a question whether an act was done by any person, any fact which supplies a motive for such an act is d'eemed to be relevant, and this is true although it may tend to show the accused guil'ty of another offense than the one charged."

In a recent case, that of State v. Graves, 21 N. M. 556, 157 Pac. 160, this court held that:

"On a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of that for which he is on trial is irrelevant and inadmissible. But, where other criminal acts of accused form an inseparable part of the whole deed or transaction, or where such acts are concomitant parts of the criminal act, evid'ence thereof is admissible, notwithstanding that it proves or tends to prove the commission of a crime not charged in the indictment."

Another recent case to the same effect is State v. Pino, 21 N. M. 660, 158 Pac. 131. In this latter case this court recognized the general rule which we have set out supra, and one of the exceptions to which we have referred.

[12, 13] Applying the principles herein announced to the facts of the case, it is clear that the admission of the evidence complained of tended not only to prove a motive in line with the reasoning of the McGinnis case, but the evidence also tended to prove an intent on the part of the appellants to take life if necessary in order to retain their regained freedom, because the evidence discloses that they armed themselves with weapons taken from the jail, which would show a purpose to resist recapture by the use of the weapons in question, all of which would go to explain their entent in the matter of the subsequent homicide, which, in our opinion, makes the admission of that evidence relevant to the issue in the homicide case. We also believe that the transactions pertaining to the escape from the jail and subsequent flight, with the incidental facts pertaining thereto, comprise a common scheme or plan, and, while necessarily embracing the commission of two or more crimes, nevertheless they are so related to each other that proof

of the one tends to establish the other, and that therefore the admission of such evidence would be relevant as an exception to the general rule in this respect. For the reasons assigned, we therefore conclude that there was no error committed by the district court in admitting the evidence as to the transactions in or around the jail, which is the basis of the first point urged by appellants.

[3] The next point urged by the appellants is that the witness Swope, for the state, was not qualified as an expert, and that his testimony that the deceased was killed with a leaden bullet was not admissible. The record does not disclose that any objection was made to the testimony of this witness in this connection, and the matter was first called to the attention of the trial court in the motion for a new trial. In the case of State v. Garcia, 19 N. M. 414, 143 Pac. 1012, this court said:

"No question is here for decision; the court below never having decided the point. The proposition, as presented, amounts to an appeal to this court for the first time to award a new trial to a defendant on the ground of the absence of evidence to convict him, when the lower court has never been asked to so decide. This is not available."

"In some of the cases cited the refusal of the court to review the question is based upon the fact that the question was neither presented at the trial nor presented in the motion for a new trial, while in others it is held that the question must be presented at the trial, and if presented for the first time in a motion for a new trial, it is not available. Evidently the latter position is logically correct. The object of a motion for a new trial, except as to matters addressed to the discretion of the court, such as newly discovered evidence, misconduct of the jury, and the like, is to call to the attention of the court errors which, in the hurry of the trial, he has committed, so that before the case goes to judgment these errors, upon more mature consideration and argument, may be corrected, and a new trial granted. It is not the object of a motion for a new trial to call the court's attention for the first time to some error which counsel for the defendant all the time knew, but which he failed to present to the court in proper form at the time the error was committed."

Section 4506, Code 1915, provides:

"Exceptions to the decisions of the court upon any matter of law arising during the progress of a cause must be

State v. Starr, 24 N. M. 180.

taken at the time of such decision and no execeptions shall be taken in any appeal to any proceeding in a district court except such as shall have been expressly decided in that court: Provided, that no exception will be required to be reserved in the trial of equity cases or cases before the court in which a jury has been waived."

The fact that this statute is a re-enactment of sections 3139 and 3145 of the Compiled Laws of New Mexico of 1897 is pointed out in State v. Padilla, 18 N. M. 573, 139 Pac. 143, and in the case of Territory v. Watson, 12 N. M. 419, 78 Pac. 504, it was held that the earlier sections referred to were applicable in criminal cases as well as in civil cases. See, also, State v. McKnight, 21 N. M. 14, 153 Pac. 76. In the case of James v. Hood, 19 N. M. 234, 142 Pac. 162, it was held:

"A ruling on the admissibility of evidence, to which no exception has been taken will not be considered on appeal."

See, also, A. T. & S. Fe Ry. Co. v. Rodgers, 16 N. M. 120, 113 Pac. 805.

The general rule upon this subject is thus laid down in 2 Cyc. at page 693:

"All objections to the admission or exclusion of evidence, its competency, relevancy, or sufficiency, and as to the competency of witnesses and their examination, must be made in the trial court. They cannot be raised for the first time on appeal."

Numerous authorities are collected in the note to the text in Cyc., and examination of these will disclose that the general rule announced is practically universal. That this rule has application in capital cases and in criminal cases, as well as in civil, is pointed out in 12 Cyc. at 812. We therefore find that the trial court did not err in this respect.

It is next contended that the commitments and jail records were improperly admitted in evidence on the ground that they related to transactions occurring at a time and place other than that of the alleged homicide, and were too remote to be material in this case, and for the further

reason that the commitments were not properly identified
and did not show upon their face to whom or what of-
ficer they were addressed, and there was no proof to
show that such commitments were received by or issued
to any qualified officer or his deputies; that they are not
shown to be genuine or to have been issued by any per-
son in authority; also that they tended to show that
the defendants and other persons were guilty of alleged
crimes and offenses, which, if they were committed, were
committed at a time and place other than the alleged
homicide and too remote from the same to be material.
Other objections are urged of a similar character not
necessary to be referred to here.

This point is not briefed by the state, and the record
does not disclose the purpose sought to be served in the
introduction of either the commitments or the jail rec-
ords.    We would naturally presume that they were
offered upon the theory that they either served to iden-
tify the defendants and their associates as the persons
charged under the third count of the indictment with
a conspiracy to escape from the jail, and while in the
execution thereof the defendant Starr deliberately and
premeditatedly killed the sheriff, the other defendants
aiding and abetting him therein, or that they were of-
fered upon the theory that it was incumbent upon the
state to show that the prisoners had been lawfully com-
mitted to the county jail, in anticipation of the defense
which might be interposed concerning the alleged un-
lawful arrest of the prisoners by the sheriff and his
posse.   The only argument offered by counsel for appel-
lants in their brief is that the commitments and jail
records were irregular and their genuineness not prov-
en.   A contention of this kind might be germane where
the question of the right of the state to retain the pris-
oners in custody might be at issue, as in habeas corpus
proceedings, but the regularity or genuineness of the
commitments and proceedings cannot be material and rel-
evant to the issues in this case. No attack is made upon
the authority of the sheriff to pursue and arrest the

escaping prisoners, and no such attack could be entertained.

[4] It was held in a Vermont case, State v. Shaw, 73 Vt. 149, 50 Atl. 863, that whether a sheriff is justified in pursuing and arresting, without warrant, one who has been confined in jail and has broken therefrom, does not depend upon whether the imprisonment was legal, but on whether the officer has a reasonable cause to suspect the commission of a felony.,

The objection, therefore, as argued, going to the regularity or genuineness of the commitments and records is not well taken, and this is the only attack made upon the evidence in question. Even if it should be assumed that these commitments were irregular or not genuine, it would not furnish a ground of attack in this proceeding as we view the matter.

[5] It is urged that the court should have allowed a separate trial as to the defendant Starr, and should have granted a continuance on his application. The ground upon which the application for a separate trial was based was that the defense might be inconsistent. An examination of the record as a whole does not show any prejudice arising by reason of the denial of the request of the defendant, and the rule upon the subject in question is well established and is thus stated in 8 R. C. L. 161:

"Where several persons are jointly indicted, they cannot claim separate trials as a matter of right; this is a matter of sound discretion, to be exercised by the court with all due regard and tenderness to prisoners, according to the known humanity of our criminal jurisprudence; and an order refusing such trial will not be reviewed."

[6] There clearly was no abuse of discretion by the trial court under the circumstances of this case. As to the continuance, the question is likewise one of discretion residing in the trial court. This court held in the case of Territory v. Lobato, 17 N. M. 666, 134 Pac. 222, L. R. A. 1917A, 1226, that the granting or denying of a motion for continuance is within the discretion of the

trial court, and unless such discretion has been abused
to the injury of the defendant, the denial of such mo-
tion will not constitute error.   It is sufficient in this
connection to say upon the subject of discretion that
at the time the question of continuance was under con-
sideration the defendant Starr announced in open court
that he was ready for trial, thereby waiving the appli-
cation so far as he was concerned.   An examination of
this defendant, however, was made, by direction of the
court, and the physician made a number of reports
at different times, which, however, disclosed that the
defendant Starr was physically able to undergo trial.
We therefore conclude that the defendant Starr was
not prejudiced by the action of the trial court in this
respect.

[7]   It is next contended that the jurors were allow-
ed to separate, and that in capital cases prejudice is
presumed under such circumstances.   The only light
the record throws upon this question is an affidavit
appearing in the record proper of one S. A. Telles, who
was one of the jurors, in which he states that during
the progress of the trial a number of the jurors were
excused, and, accompanied by a baileff, retired to a
lavatory within the building, which the jury entered,
the bailiff remaining outside.   It appears from this af-
fidavit that shortly after the jurors had entered the
lavatory an unknown man came out.   The lavatory in
question is a large room, and the only attempt to show
prejudice appears from a statement to the effect that
it was possible for the said man to have talked about
the case with the jurors who had entered the lavatory.
That he did so is not represented or disclosed.   In the
case of United States v. Cook, 15 N. M. 124, 103 Pac.
305, the territorial Supreme Court, in discussing this
question, held:

"There is no error in the court having allowed the jury
to separate, before the case was submitted to them, in the
absence of a showing that accused was prejudiced thereby."

State v. Starr, 24 N. M. 180.

In the case cited the question is quite fully discussed. In the present case under consideration there was not that character of separation which is ordinarily referred to in which the jury is permitted to scatter during the course of the trial for a number of hours perhaps. In this case the separation would be purely technical, and the necessity for the application of the rule stated would be all the more apparent.

[8]  That the court improperly permitted counsel for the state to unconscionably cross-examine the defendants, especially the defendant Starr, is next urged as a subject of prejudicial error. Careful reading of the record does not bear out this contention in any way. No argument particularizing the contention is made. We believe that the matter, however, is entirely disposed of by the holding in the case of Territory v. Claypool, 11 N. M. 568-580, 71 Pac. 463, 466, where the territorial Supreme Court said:

"The limitation of cross-examination is a matter which rests in the sound discretion of the court, and unless there is manifest abuse of such discretion, an appellate court will not reverse the ruling of the trial court."

See, also, State v. Carter, 21 N. M. 166, 153 Pac. 271.

[9]  It is contended that the defendants' requested instruction No. 1 was improperly refused by the trial court. Little importance is apparently attached to this alleged error; the only statement made by counsel for appellants in this connection being that it was erroneous to confine defendants' plea of self-defense to acts of the deceased alone without regard to acts of his posse. It is admitted, however, that the instructions as given by the court numbered 24 and 25 did not contain any such limitation. The instructions last referred to did cover the subject of self-defense; and, aside from the fact that the requested instruction was in itself erroneous, the matter is disposed of by a former holding of the territorial Supreme Court that, if instructions given cover

and correctly state the law of the case, it is not error to refuse to give other instructions on the same points, although they may be correct statements of the law applicable thereto. Territory v. Kimmick, 15 N. M. 178, 106 Pac. 381. It was likewise held in State v. Orfanakis, 22 N. M. 107, 159 Pac. 674, that no error can be predicated upon the refusal of the trial court to give an instruction when the instructions given by the court on its own motion fully and completely covered everything contained in the refused instruction. The admission of appellants' counsel that instructions Nos. 24 and 25 as given avoid their objection urged would therefore obviate the necessity of seriously considering the objection made. See, also, State v. Rodriguez, 23 N. M. 156, 167 Pac. 426, L. R. A. 1918A, 1016.

[**10**]    It is further contended that defendants' requested instruction No. 4 should have been given without alteration. This instruction was given by the court as the court's instruction No. 25. The only alteration complained of which is deserving of consideration appears as a change in the language in the concluding part of the requested instruction as follows, "In that event you are to acquit the defendants." It was changed by the court to: "In that event you may acquit the defendants." We agree with the Texas court which said in this connection in the case of Wilson v. State, 71 Tex. Cr. R. 399, 160 S. W. 83, that this criticism is "hypercritical." The Texas court pointed out that the word "may" is sometimes used interchangeably with "should" and "must," and vice versa. In no event could the use of this word "may" have been an injury to the appellants. This court has passed upon a similar question in the case of Lorenzino v. James, 18 N. M. 240, 135 Pac. 1172. In that case, however, the question did not arise upon the subject of instructions in criminal cases. We fully agree with the Texas court in its holding that, where upon trial of murder the court in an instruction used the word "may," there was no

reversible error, as the same may be interchangeably used with "shall" or "will."

It is next contended that defendants' requested instruction No. 5 should have been given. It is argued that it was necessary to fix upon defendants knowledge of the identity of the officers. Reference to instruction No. 25, however, will disclose that this matter was fully covered in the instruction given.

It is urged that the requested instruction No. 6 should have been given, and that instructions Nos. 19 and 20 as given by the court did not go far enough, in that they left out the idea of ability to and danger of the sheriff and his posse carrying out design.

It is further urged that defendants' requested instructions numbered 7 and 8, as well as 6, should have been given to obviate this objection. Upon an examination of the instructions as given, we are of the opinion that the court's instructions numbered 19 and 20 fully covered the scope of the requested instructions numbered 6, 7, and 8, and for that reason there was no error in refusing the requested instructions.

[11] It is finally argued in connection with the requested instructions that requested instruction No. 16 should have been given. This was to the effect that under the laws of the state of New Mexico a person has a right to carry arms in the defense of his person while traveling. The requested instruction was evidently sought upon the theory that the right to carry weapons was conferred upon travelers by section 1708, Code 1915, which does sanction the right of travelers to carry arms for their own protection while actually prosecuting a journey. The question naturally arises as to whether the defendants, after their escape from the county jail and while fugitives, were travelers within the meaning of the statute referred to, and therefore entitled to the requested instructions. The case of Shelton v. State, 27 Tex. App. 443, 11 S. W. 457, 11 Am. St. Rep. 200, is in point. The Texas court in that case held that a fugitive from justice is not a "person traveling"

within code, art. 319, punishing the carrying of weapons, except by persons traveling. We agree with this conclusion of that court, and therefore hold that a fugitive from justice is not a person traveling within section 1708, Code 1915, permitting travelers to carry arms.

Finding no error in the record, the judgment of the lower court is affirmed; and it is so ordered.

ROBERTS, J., concurs.

PARKER, J., being absent, did not participate.

### ON REHEARING.

PROSPER SHERRY, FRANK HERRON, and H. B. HOLT, all of Las Cruces, for appellants.

H. L. PATTON, Attorney General, for the State.

HANNA, C. J. [14] A rehearing was granted in this case because of a doubt entertained by the court as to the propriety of the action of the trial court in refusing to grant appellant a continuance. In the former opinion it is stated that at the time the question of continuance was under consideration the defendant Starr announced in open court that he was ready for trial, thereby waiving the application so far as he was concerned. A review of the transcript discloses that this statement was inaccurate. The defendant was arraigned on Saturday, March 11th. Being without means to employ counsel, two members of the bar of the district court of Doña Ana county were appointed to represent the accused Starr. The case was set for trial for Monday, the 13th of March. When the case was called to trial on that day, one of the defendant's attorneys said:

"The defense asks for a continuance on behalf of Mr. Starr for the term on account of his physical condition."

Thereupon the court said:

State v. Starr, 24 N. M. 180.

"Let the records show that the doctor announces that he was perfectly able to go to trial last Saturday, and the defendant himself asked for an immediate trial."

Thereupon the parties proceeded to the selection of the jury. About 3 o'clock in the afternoon the attorneys for the defendant offered the report of the investigation and examination of Dr. B. E. Lane, showing the defendant Starr's physical condition. This certificate stated that the doctor believed that it would be detrimental to the health of the defendant Starr to go through a trial for his life at the present time; that he found his pulse to be 105, temperature 100½°, and respiration 22. The court denied the application for a continuance, and it is strenuously insisted by counsel for appellant that in so doing the trial court was guilty of a gross abuse of discretion, and that the case should be reversed on this ground.

The defendant Starr testified as a witness in the case, and seemingly was in full possession of all his faculties. No showing is made, or attempted, to the effect that his attorneys were prejudiced in conducting his defense by reason of his physical condition, or that he was not able at all times to intelligently confer with his counsel; and there is no showing, or attempt to show, that he was prejudiced by the action of the trial court in refusing the continuance. While it is true that Dr. Lane gave it as his opinion that the defendant was not physically able to undergo the strain of a trial and that his temperature was above normal, still the trial judge had the defendant before him, and also had the statement of the county physician to the effect that the defendant could go to trial without any impairment to his health. Under these circumstances we cannot say that there was an abuse of discretion in denying the application.

In the case of Goddard v. State, 78 Ark. 226, 95 S. W. 476, the court said:

"Continuances, especially those based on the physical condition of the defendant at the time of the application therefor, are addressed largely to the discretion of the

State v. Starr, 24 N. M. 180.

trial court. That must necessarily be so, for that court has the defendant before it in person, and can to some extent judge from his personal appearance whether his physical condition is such as to enable him to stand the ordeal of the trial."

In that case it was held that it was not an abuse of discretion for the trial court to deny an application for a continuance on account of the physical condition of the defendant; such application being supported by the certificate of a physician that he was not able to endure the ordeal of the trial without impairment to his health.

In the case of McDaniel v. State, 103 Ga. 268, 30 S. E. 29, there were conflicting statements by physicians as to the physical condition of the defendant. The court said, in speaking of the opportunity of the trial court to observe the defendant:

"It may be, and probably was, the result of this trial by inspection which brought about the decision adverse to the motion to continue. In such cases the good sense sound judgment, and humanity of the trial judge must be relied upon as safeguards against injustices. I cannot say, under all the circumstances of the case, that there was any abuse of discretion in refusing the continuance."

In the case of Lipscomb v. State, 76 Miss. 223, 25 South. 158, it is said:

"Of necessity such applications, based upon the physical or mental condition of the party indicted for crime, must, even more largely than ordinary applications for the postponement of trials, rest in the discretion of the trial judge; he has the person of the accused before him, and the very appearance of the party may be considered by him in reaching a just conclusion. Were this otherwise, the guilty would be afforded opportunity to defeat a trial by feigning sickness."

See, also, to the same effect, Rawlins v. State, 124 Ga. 31, 25 S. E. 1; State v. Baker, 146 Iowa, 612, 125 N. W. 659; State v. Lee, 58 S. C. 335, 36 S. E. 706. These authorities clearly sustain our position.

It is argued that the court should have continued the case in order that defendant's attorneys might have

had more time in which to prepare his defense. No re-
quest, however, was made to the court to continue the
case on this ground.

[15]   It is also urged that the court's instructions
Nos. 24 and 25 confined appellant's plea of self-defense
to acts by the deceased alone to the exclusion of acts
by any member or members of his posse. No objection
or exception was made to the instructions given on this
ground. Counsel for appellant presented to the court a
request for an instruction covering their theory of the
case in this regard, but this instruction was erroneous,
and the trial court properly refused to give it. It has
been uniformly held by this court that, in order to pre-
serve for review error on instructions given by the court,
or requested instructions refused, the complaining par-
ty must have tendered proper instructions and have
excepted to the refusal of the court to give the same,
or, by excepting to instructions, call the court's atten-
tion specifically to the alleged error. State v. Gon-
zales, 19 N. M. 467, 144 Pac. 1144; State v. Graves, 21
N. M. 556, 157 Pac. 160; State v. Johnson, 21 N. M.
432, 155 Pac. 721; State v. McKnight, 21 N. M. 14, 153
Pac. 76. The appellant having failed to call the atten-
tion of the court to the claimed vice by proper excep-
tions or tender to the court a correct instruction on the
subject, no question is here for review.

In our opinion in chief we said in connection with
this matter that appellant's counsel admit that instruc-
tions Nos. 24 and 25, as given, avoid their objection,
thereby obviating the necessity of seriously considering
the objection urged. Counsel in rehearing point out
that the use of this language in their brief was unfor-
tunate and conveyed an erroneous impression. While
it is true we did not correctly understand the position
of appellant's counsel, nevertheless the assignment of
error in this particular is not well taken, for the reason
pointed out in both our opinion in chief and the opin-
ion on rehearing, viz. that the requested instruction was
in itself erroneous.

[16] Appellant further argues that the court committed error in not sustaining the demurrer to the third count of the indictment, and also in overruling the motion to withdraw this third count from the consideration of the jury. This question, however, was not presented to the court in the original hearing and will not now be considered.

[17] Upon rehearing it is strenuously insisted that the court was in error in the original opinion in holding that appellant was not prejudiced by the substitution of the word "may" for the words "are to" in appellant's requested instruction No. 4, given by the court as instruction No. 25. The requested instruction read as follows:

"Gentlemen of the jury, you are hereby instructed by the court that, if you believe from the evidence that the deceased was an officer and endeavoring to arrest the defendants or either of them, and that while so doing the fact that deceased was an officer was unknown to the defendants or either of them, and that the defendants had no reasonable ground to know or believe that deceased was an officer, and that the conduct of deceased towards the defendants or either of them was threatening and was of such nature as to cause the defendants to sincerely and with reason believe that they were in imminent danger of being killed themselves or of suffering great bodily harm, and that the only means by which defendants could have prevented the loss of their own lives or gerat bodily harm to themselves was to kill the deceased, then in that event you are to acquit the defendants or either of them on the grounds of self-defense."

This instruction was changed by the court in the concluding portion to read, "then in that event you may acquit the defendants or either of them on the ground of self-defense."

It was argued upon the original hearing that defendant's requested instruction No. 4 should have been given without alteration. Neither the requested instruction nor the instruction as given by the court correctly stated the law, in that it made the fact that it was unknown to any one of the defendants that the de-

ceased was an officer, and that the conduct of the deceased towards either of the defendants was threatening, etc., a material element to be considered by the jury in the law of self-defense, giving to one of the defendants who might have known that the deceased was an officer, and that he was attempting to arrest the fugitives, the right to invoke the law of self-defense by reason of the fact that some one of the defendants did not know that the deceased was an officer and was attempting to arrest them, etc. And this even though such defendant might have had full knowledge of the identity of the officer and his purpose.

[**18, 19**] This instruction as given, even assuming that "may" could not be used interchangeably with "shall" or "must," was more favorable to the appellant than he was entitled to. It is well settled that a defendant cannot complain of the refusal of the court to give an improper instruction. Blashfield on Instructions to Juries (2d Ed.) § 172. It is likewise well settled that an appellant cannot complain of the instruction which, although erroneous, is favorable to the complaining party. Blashfield on Instruction, § 439; Territory v. Gallegos, 17 N. M. 409, 130 Pac. 245.

Some other propositions are argued, but are disposed of by the original opinion, with which we are content.

For the foregoing reasons, the former opinion will be adhered to; and it is so ordered.

ROBERTS, J., concurs.

PARKER, J. I dissent. The use of the word "may" instead of "should" in the instruction was error to the prejudice of the defendant. The instruction requested was erroneous as pointed out in the opinion. But no controversy arose between the court and counsel on this ground. The instruction, as modified, contained the erroneous substitution of the word "may" against the objection of defendant.

For these reasons, the case should be reversed.