THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GEORGE DE RENNA, Defendant.

County Court, Bronx County, March 3, 1938.

*Samuel J. Foley,* District Attorney [*Sol Boneparth,* Assistant District Attorney], for the plaintiff.

*Albert H. Vitale, A. William Gerstman* and *Samuel J. Kleiman,* for the defendant.

STACKELL, J. The defendant and three others were indicted charged with the crime of murder in the first degree. Only this defendant has been brought to trial as the others have not been apprehended.

The crime alleged in the indictment occurred on the 29th day of January, 1938, at premises 2629 Third avenue, county of Bronx.

Defendant interposed a plea of not guilty and the case was duly tried and resulted in a verdict of guilty of murder in the first degree with a recommendation of the jury that the defendant be sentenced to life imprisonment.

It appears that the defendant and his confederates entered a pawnbroker's shop located at 2629 Third avenue, at about eight-thirty in the morning; that two of the defendant's accomplices produced guns and informed those in charge of the shop that a robbery was in progress. There were three men in charge of the store at that time — Canariato, the manager, Brown, the assistant manager, and Brandt, the clerk. Brown and Brandt were directed to go to the rear of the store and to lie down on the floor. They did as directed. Some clothing was then thrown over their heads and bodies. The criminals then went to the safe or vault and removed therefrom a large number of pledges consisting of watches, rings, chains and other personal property.

While this robbery was in progress, Canariato signaled to the Holmes Patrol and then concealed himself in a place unknown to the criminals.

The defendant and his accomplices, being unaware that the police had been notified, proceeded to put the jewels into a large sack or bag which they brought with them for this purpose, and while so engaged the police arrived.

It also appeared from the testimony adduced during the course of the trial that the sum of eight dollars was taken from the pocket of Brandt and the sum of forty-two dollars from a customer who had entered the store and that approximately six hundred dollars had been removed from the cash register.

The defendant through his counsel contends that while the defendant and his confederates were engaged in the act of filling the bag with the jewels and pledges, they heard a police siren; that they then dropped their loot and attempted to escape; that Sergeant Kilpatrick and Officer Pollit arrived, a shooting occurred during which Sergeant Kilpatrick was killed, Officer Pollit was severally wounded in the arm, and Lavin, one of the criminals, received wounds which proved fatal; that this defendant was seen running out of the store; was pursued by Officer Platt who caught him a short distance away from the store and took him into custody.

The case was fully and fairly tried and the district attorney contended that the murder was committed while the felony was in progress; the defendant contended that he and his accomplices had abandoned the felony and were engaged in flight at the time the shots were fired; that a robbery was in progress before the arrival of the police was undisputed and in fact, admitted.

The case was submitted to the jury which after hours of deliberation rendered a verdict of guilty of murder in the first degree with a recommendation of life imprisonment, pursuant to section 1045-a

of the Penal Law. This section amended the law in only one particular, to wit, that a jury had the right in a felony murder to recommend life imprisonment.

The language of the section is as follows:

" Punishment for murder in the first degree.

" Murder in the first degree is punishable by death, unless the jury recommends life imprisonment as provided by section ten hundred forty-five-a."

§ 1045-a. " Life imprisonment for felony murder; jury may recommend.

" A jury finding a person guilty of murder in the first degree, as defined by subdivision two of section ten hundred forty-four, may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life. Upon such recommendation, the court may sentence the defendant to imprisonment for the term of his natural life."

Sections 1045 and 1045-a were enacted by the Legislature in 1937 (Laws of 1937, chap. 67), to take effect on March 17, 1937.

At the time of the trial the court instructed the jury that they could bring in one of three verdicts. One, murder in the first degree; two, murder in the first degree with a recommendation that the defendant be imprisoned for the term of his natural life, and three, not guilty.

The defendant now appears for sentence. The People urge upon the court that the recommendation of the jury that the defendant be sentenced to life imprisonment should not be adopted. In support of the People's contention the district attorney urges that the robbery was one that was carefully planned by this defendant and his accomplices.

The defendant knew that his accomplices whom he accompanied to the scene of the crime were armed with revolvers; that during the progress of the crime a sergeant of police, who was then and there engaged in the performance of his duty, was shot and killed; that another policeman, who was at the scene for the same purpose, was wounded, and has been confined to the hospital for medical treatment and attention.

He further urges upon the court that this defendant is entitled to no consideration because he has refused to disclose the identity of his accomplices who participated with him in the commission of this robbery and murder.

The defendant, on the other hand, through his counsel, urges that the jury's verdict should be adopted by the court and in support thereof contends that the defendant did not fire the fatal shot and he, at no time, had a gun, and points out that the People's

witness, Mr. Brown, testified that when the defendant entered the pawnshop, he placed his hands upon the counter and that he had no weapon. He further points out that the defendant ran from the store and he was pursued by Officer Platt for a short distance when apprehended; that Officer Platt promptly searched him and found he had no weapon, and that when the defendant was questioned by the district attorney and the chief assistant district attorney at the time of his arrest, he always maintained that he came to the scene of the crime without a gun.

Therefore, he urges the defendant was not the killer in this case, and that it was the intention of the jury as expressed by their verdict that this defendant should be sentenced to life imprisonment and that the extreme penalty of death should be reserved for the actual killer.

He urges that this defendant played an insignificant part in the commission of this crime and the death penalty should not be inflicted upon him.

He further contends that the defendant's failure to disclose the identity of his confederates was likewise known to the jury and that the learned district attorney, in his summation, referred to that fact with great emphasis and demanded from the jury that by reason thereof the defendant be convicted of murder in the first degree without a recommendation.

He further urges that the sentence is not discretionary with the court but that the court must adopt the recommendation of the jury and refers to the language of the statute and that the recommendation is a part of the jury's verdict and that it was the intention of the Legislature to amend the law as it formerly existed to permit the jury to find the defendant guilty with a recommendation of life imprisonment and that this recommendation is mandatory and must be adopted by the court.

It, therefore, becomes necessary for the court to interpret this statute with a view of determining the intention of the Legislature when this amendment was enacted.

The history of the enactment of this law is, briefly, as follows:

On January 6, 1937, His Excellency, the Governor of the State of New York, sent to the Legislature his Annual Message which contained, among other matters, the following:

" While discussing the anti-crime program, I wish to bring once more to your attention, a somewhat related matter which has long been on my mind. That is, the necessity of changing the Penal Law on felony murder. Under our existing law, in the event that a murder occurs during the commission of any felony, all those involved are held equally responsible and if found guilty,

must be sentenced to death. The jury has absolutely no discretion. The verdict must either be acquittal or murder in the first degree, for which the penalty is death. In other cases of murder, the jury has the right of bringing in verdicts of murder first degree, murder second degree, or manslaughter. As the result of the limitation placed on the jury in felony murder cases, the jury is faced with the choice of condemning to death a man for whom it would like to show some clemency or, on the other hand, of letting him go completely unpunished. I believe that the sentence for felony murder should continue to be death — the same as for premeditated murder.

" However, I would empower a jury to accompany any verdict of guilty with a recommendation of executive clemency in which case the sentence shall not be death, but imprisonment for life. My reasons for this recommendation are two-fold; the first is that it will make it easier for the jury to bring in verdicts of guilty in felony murder cases. In the second place, it will permit the jury to fit its verdict to what it may consider to be the varying degrees of moral guilt of the persons involved in the same crime.

" I strongly recommend this change."

As a result of the Governor's recommendation, the above-quoted amendment was enacted, although it was not enacted precisely in the manner suggested by the Governor. It is to be noted that the Governor in his message states: " However, I would empower a jury to accompany any verdict of guilty with a recommendation of executive clemency *on which case the sentence shall not be death, but imprisonment for life.*"

It thus appears that at the very threshold of this legislation, it was the intention of the Chief Executive of this State where a jury recommended executive clemency, the sentence shall not be death, but imprisonment for life.

The reasons for the recommendation are likewise worthy of serious consideration. He states that his reasons are two-fold. First, " that it will make it easier for the jury to bring in verdicts of guilty in felony murder cases and in the second place, it will permit the jury to fit its verdict to what it may consider to be the varying degrees of moral guilt of the persons involved in the same crime. I strongly recommend this change."

The jury in the case under consideration was given the opportunity to fit its verdict to what it may consider to be the degree of the moral guilt of this defendant in the commission of this crime and after so considering, the jury, by its verdict, found that the defendant shall not be sentenced to death, but imprisoned for life.

The jury did precisely what the law authorized them to do.

Has this court the power to reject that finding and substitute its own conclusion as to the moral guilt of the defendant?

Nowhere in the recommendation is it suggested by the Governor that the discretion should be vested with the court. Nor, for that matter, with the Chief Executive, because the language is where the jury brings in the recommendation, " sentence shall not be death, but imprisonment for life."

It may fairly be said that an interpretation of this message indicates that it was the intention that the matter of punishment should be determined by the jury who heard the evidence in the case as expressed by its verdict.

In a case of imprisonment for life, the sentence can, in no way, be disturbed except by constitutional amendment, by act of the Legislature or by act of the Governor.

As stated above, the Legislature did not adopt the same language employed by the Governor, but said that where the jury brings in a verdict with a recommendation for life imprisonment, " the court may sentence the defendant to imprisonment for the term of his natural life."

Was it the intention of the Legislature to carry out the ideas suggested by the Governor's recommendation, to wit, that the jury's verdict shall be mandatory or was it the intention of the Legislature to make it permissive or optional with the court?

It is to be noted that the language uses the word " may " which in its ordinary and popular sense would indicate that it is discretionary with the court, although in its technical and legal sense, it has frequently been construed to mean " shall " or " must."

It is likewise to be noted that the language employed says " upon such recommendation, the court may sentence the defendant to imprisonment for the term of his natural life," but it does not say or in the alternative, the court may sentence him to death.

Is that to be implied? Nor does the language employed use the words that the court " in its discretion " may sentence the defendant to imprisonment for the term of his natural life.

If the Legislature had intended the use of the word " may " as permissive or discretionary, would it have clearly indicated such discretion?

Black, in the second edition of his excellent book on " Interpretation of Laws," in dealing with the subject-matter under consideration, section 151, " words in a statute importing permission or authorization may be read as mandatory, and words importing a command may be read as permissive or enabling, whenever, in either case, such a construction is rendered necessary by the evident intention of the Legislature or the rights of the public or of private persons under the statute."

Taken in its natural and ordinary sense, the word "may" does not import a command, but merely signifies permission, ability or possibility, and generally it denotes that the action spoken of is optional with the person concerned, or rests in the discretion of the court or body to which permission is given. And the word always retains its primary meaning, unless a different construction is necessary to give effect to the clear purpose and intention of the Legislature, to make the statute accord with settled public policy, or to save the rights of parties in interest.

And it is well settled that "may" in any statute is to be construed as equivalent to "shall" or "must" when the public interests or rights are concerned or when the public or third persons have a right *de jure* to claim that the power granted should be exercised.

Many different tests have been proposed for determining whether a statutory provision is to be regarded as mandatory or merely directory. But none of them is entirely satisfactory as a fixed rule, or adequate to the solution of all possible cases. The object here, as in all cases of construction, is to ascertain the meaning and intention of the Legislature, and when that is clearly discoverable, it will control the literal import of the words used and justify the interpretation of mandatory words in a merely permissive sense or *vice versa*.

Section 152. Where a word of authorization is coupled with a mandatory term, the former takes color from the latter. Thus the expression "may" and "shall" means "must."

Where a fair interpretation of the statute which directs acts or proceedings to be done in a certain way shows that the Legislature intended a compliance with such provisions to be essential to the validity of the act or proceeding, or when some antecedent prerequisite conditions must exist prior to the exercise of the power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory.

In the case at bar the prerequisite condition before the court could impose sentence was the jury's verdict, and once the jury having rendered its verdict under the language here employed, the power to be exercised becomes mandatory.

Thus it was held where a statute provides that a court "may" appoint three commissioners to settle a disputed boundary line between towns, the word "may" is equivalent to "shall" and hence the town in question cannot agree that only two commissioners be appointed. (*Monmouth* v. *Leeds*, 76 Me. 28.)

Thus a party has an absolute right to costs, when his case comes within the terms of the statute, although it is only provided that

they " may " be awarded to him. (*Carter* v. *Barnum*, 24 Misc. 220.)

Although in another case it was held that costs were not mandatory because the Legislature used the following language: " That the court ' may ' in its discretion award costs." There it was held permissive. (*Darby* v. *Condit*, 1 Duer, 599.) So also in the statute providing that the court may grant a change of venue or order the removal of the cause to another court for trial, where it appears that a fair and impartial trial cannot be had at the place where the suit was brought, the word " may " will be read as equivalent to " must." " On a proper application and showing of facts, the party is absolutely entitled to a change of venue, and the court has no discretion to refuse it." (Black on Interpretation of Laws [2d ed.], 556; *Falls of Neuse Mfg. Co.* v. *Brower*, 105 N. C. 440; 11 S. E. 313.)

On the same principle, a statute providing that a final decree shall be allowed in certain cases means that the decree must be allowed when it is asked by one who stands in such a relation to the case that he can demand it. (*Matter of Jordan*, 94 U. S. 248.)

And where an act provides that the judge of the Probate Court " may " set apart a homestead for the widow and minor children of a decedent, it is meant that in a proper case he " must " do so. (*Demartin* v. *Demartin*, 85 Cal. 71; 24 P. 594.)

Also where the statute provides that on the dissolution of a corporation and on the application of a creditor or stockholder the court " may " appoint a receiver, it is not in the discretion of the court to refuse, but the requirement of the statute is imperative. (*Havemeyer* v. *Superior Court*, 84 Cal. 327; 24 P. 121.)

Where the law provides that the court " may " allow interest on the damages given in an action from the time the verdict was returned to the time of rendering judgment thereon, the court " must " allow interest and has no discretion to refuse. (*Forbes* v. *Bethel*, 28 Me. 204.)

A statute providing that on the filing of a prescribed affidavit, the court " may " continue the cause is mandatory, and the court has no discretion to refuse a continuance. (*Chicago Public Stock Exchange* v. *McClaughry*, 148 Ill. 372; 36 N. E. 88.)

A provision in the statute when the personal estate of a decedent is not sufficient for the payment of debts the executor " may " petition the court for leave to sell real estate is imperative and the word " may " will be interpreted as equivalent to " must." (*Pellitier* v. *Saunders*, 67 N. C. 261.)

A provision that a judge may sign a bill of exceptions after he ceases to be judge has been construed to mean that he must

sign the bill of exceptions and the word "may" was intended to be used in an imperative sense. (*Montana Ore Purchasing Co.* v. *Lindsay*, 25 Mont. 24; 63 P. 715.)

These are but a few of innumerable instances where the courts have construed the word "may" to mean "must."

A similar construction has been placed upon criminal statutes as well. (*Matter of Doyle*, 62 W. Va. 280; 57 S. E. 824.)

The statute dealing with this case contained the provision that in any other criminal case and contempt case where a writ of error lies, the court "may postpone" the execution of the judgment for such time and on such terms as it deems proper. The words "may postpone" were held to mean "must postpone" the execution of the judgment and the clause was interpreted as obligatory and mandatory.

Judge BRANNON, in writing the opinion for the court, says: " The little word ' may,' when used in statutes, has given rise to much discussion. Sometimes it is permissive, sometimes mandatory, as dependent on intent. * * * Even in civil cases, when the provision is manifestly designed for a person's relief or remedy, it is held mandatory. Much more so in criminal cases."

The word " may " in a statute means " must " or " shall " where the public or third persons have a claim *de jure* that the power shall be exercised. The word is *prima facie* permissive importing discretion; but courts give it mandatory force when it is necessary to accomplish the manifest purpose of the Legislature. (*Pearson* v. *Supervisors*, 91 Va. 322; 21 S. E. 483; *United States* v. *Thomas*, 156 U. S. 353.)

In *State* v. *Barry* (14 N. D. 316; 103 N. W. 637) the defendant Barry was tried for the crime of murder in the first degree. The jury found him guilty of the crime of murder in the second degree.

The judge charged the jury that if they returned a verdict of murder in the first degree, the penalty was either death or life imprisonment and for murder in the second degree, imprisonment in the penitentiary for not less than ten years nor more than thirty years.

The jury found the defendant guilty of murder in the second degree and fixed the sentence of imprisonment in the penitentiary for a term of seven years, which was less than the minimum. The trial judge refused to accept this verdict and again advised the jury what the penalty is for murder in the second degree.

He admonished them to follow the instructions of the court concerning the penalty to be imposed. The jury retired and after deliberating for many hours, again returned with a verdict of

guilty of murder in the second degree, with a sentence of seven years to the penitentiary.

The judge rejected the verdict, ordered a new trial, the defendant was tried, convicted of murder in the first degree and sentenced to life imprisonment. On appeal, the defendant's counsel urged prior jeopardy and contended that it was the judge's duty to receive the first verdict and to pronounce sentence according to law.

The court thereupon refers to the statute in this particular case which reads as follows: " If the punishment imposed by the jury in the verdict is under the limit prescribed by law, for the offense of which the defendant is found guilty, the court ' may ' receive the verdict and thereupon render judgment and pronounce sentence for the lowest limit prescribed by law in such cases."

So though this section declares that when the punishment fixed by the jury is too great, the court is authorized to pronounce judgment for the highest punishment allowed by law.

It is to be noted that the statute used the language, " The court ' may ' receive the verdict." On appeal, it was urged by the district attorney that the statute is not mandatory, but permissive and that he may act under it or disregard it, at his option.

" We are all agreed that this contention cannot be sustained. Section 8246, *supra*, clothes trial judges with power to pronounce judgment upon verdicts like the one in question. As to this there is no controversy. But does it do more than merely create the power? Does it not in fact impose the duty? We are clear that it does. True, the language in which the power is conferred is permissive in form, but that fact is not controlling."

The question as to whether a statute is mandatory or directory depends upon the intent of the Legislature and not upon the language in which the intent is clothed. The meaning and intention of the Legislature must govern, and these are to be ascertained, not only from the phraseology of the provision, but also by considering its nature, its design, and the consequences which would follow from construing it the one way or the other. This case is applicable to the case at bar because it deals with the question of punishment and also by reason of the fact that the highest court of the State construed the word " may " not in its discretionary or permissive sense, but in its mandatory and imperative sense.

The Legislature evidently intended to carry out the recommendation of the Governor. The Governor's recommendation is very clear and explicit that when the jury brings in a verdict recommending executive clemency, the sentence shall be life imprisonment. If the Legislature had intended to give the court discretionary power, it would not have used this uncertain word for

the purpose of literally taking life. The language of the statute would have been clear and expressive and would not have left the matter in doubt.

There is an ancient and well-settled rule of the common law, which is still followed and applied, that penal and criminal statutes are to be construed strictly and not to be extended or enlarged by implication.

Black, dealing with the subject, in section 137 says: "Even in its bearing upon a case which plainly does come within the terms of the law, a criminal or penal statute must be strictly construed. Where the law may be so construed as to give a penalty and also as well as to withhold the penalty, it should be given the latter construction.

"In other words, if the statute contains such an ambiguity as to leave a reasonable doubt of its meaning, it is the duty of the Court not to inflict the penalty, and in a case of substantial doubt as to what the Legislature really meant, that construction should be adopted which is the least severe or which best protects the rights of the person accused or sought to be charged.

"The rule of strict construction of these statutes means that, as between the State, prosecuting or seeking to enforce a penalty or forfeiture, and the party sought to be charged, the construction must be strict against the State and favorable to the innocence, liberty or rights of the defendant."

The spirit of the rule is that of tenderness and care for the rights of individuals, and it must always be taken that penalties are imposed by the legislative authority only by clear and explicit enactments; *that is, the purpose to impose a penalty must clearly appear.*

If the Legislature intended to give the court the option of imposing the death penalty upon a defendant after the jury renders a verdict with a recommendation of life imprisonment, it would clearly have said so. It would have said that the judge has the discretion of either imposing a sentence to life imprisonment or a sentence to death. It would not have permitted a matter of such vital importance to be couched in uncertain language.

If the contention that the word "may" as used in the section is permissive and discretionary and that the judge has the option of imposing the penalty, then it may well be argued that the judge, in the exercise of that discretion, could impose a sentence which is less than that of life imprisonment. Clearly, nobody would seriously contend that this was the intention of the Legislature.

It is also important to consider the laws of other States in determining the intention of the Legislature.

In the State of Pennsylvania the statute (Laws of 1925, chap. 759) provides that "every person convicted of * * * murder of the first degree * * * shall be sentenced to suffer death * * * or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict."

Judge Moschzisker, Chief Justice of the Supreme Court of the State of Pennsylvania, in the case of *Commonwealth* v. *Parker* (294 Penn. St. 144; 143 A. 904), refers to the above statute and states: "In thirty-three American jurisdictions, including Pennsylvania, the common-law procedure by which the punishment of defendants convicted of the highest degree of homicide was assessed, has been changed in a material respect by almost uniform legislation. Statutes along the line of our Act of 1925 have been enacted, investing the jury with the heretofore exclusively judicial function of determining the punishment to be administered."

This decision was written in 1928. At that time, almost ten years ago, already thirty-three jurisdictions had authorized juries to bring in verdicts imposing a penalty of life imprisonment and that penalty became the sentence of the prisoner. In short, the discretion rested with the jury trying the case. Notwithstanding careful examination of the authorities, not a single case has been found which gives the power to the trial judge to determine what the penalty should be. Is it to be urged that it was the intention of the Legislature of our State to frame a statute that differs so radically from that which has been in force in at least thirty-three other States?

Or is it more logical and reasonable to assume that it was the intention of the Legislature to enact a law similar to that of all the other States in the Union which have dealt with the subject-matter. Courts should be reluctant to assume power in so important a matter unless it is clearly and expressly delegated to it. A court cannot create jurisdiction for itself. It must be conferred by law, and the mode pointed out whereby it may be acquired, must be substantially complied with, in order to obtain it.

In the case of *Simpson* v. *Winegar* (258 P. 562) the court said: "It is a general principle of statutory construction that, where the word 'may' is used in conferring power upon an officer, Court or tribunal, and the public and a third person has an interest in the exercise of the power, that the exercise of the power becomes imperative and 'may' will be construed to mean 'must.'"

On this canon of construction the precedents may be multiplied indefinitely.

In the case of *State* v. *Neuner* (49 Conn. 232) the question arose as to how many peremptory challenges a defendant is entitled to when charged with the crime of rape. Defendant claimed he was entitled to challenge ten jurors. The court denied his claim and allowed him to challenge only four.

The statute in question uses the word " may " and it was contended by the district attorney on appeal that those words were discretionary. Judge LOOMIS, in writing for the court, said: " At first view this construction seems very plausible. If the words ' may be ' are taken in their ordinary signification and this clause is to be considered by itself, it would lead to the same conclusion. But in legal signification ' may ' is often equivalent to ' must ' or ' shall,' and should be so rendered when important rights of the accused depend upon it or when the context and general purpose of this act, as in this case, manifestly require it." (To the same effect, see, also, *State* v. *Starr*, 24 N. M. 180; 173 P. 674.)

The case of *People* v. *Smith* (253 Ill. 283; 97 N. E. 649) is perhaps closest in point to the principle of law under consideration.

In that case the statute dealt with the punishment of youthful offenders. The statute divides persons who may be sentenced thereunder into two classes, " males between ten and sixteen years of age and males between sixteen and twenty-one." Section 11 provides that a boy between ten and sixteen years of age " shall be " committed to the reformatory, while section 9 provides that both classes " may be " sentenced to the reformatory.

In that case the defendant was nineteen years of age and he was sentenced to the penitentiary; defendant appealed and contended that the sentence should be to the reformatory and not to the penitentiary.

The district attorney argued that in so far as the statute referred to boys under sixteen years of age the word " shall " was employed which meant that it was mandatory on the part of the court to sentence a youthful offender to the reformatory and with reference to boys between the ages of sixteen and twenty-one, the word " may " was used and, therefore, it was discretionary with the court and sentence could be either to the reformatory or to the penitentiary.

The court said (on p. 286): " The word ' may ' in a statute will be construed to mean ' shall ' or ' must ' whenever the rights of the public or of third persons depend upon the exercise of the power to perform the duty to which it refers. [Citing cases.]

" The rights of the public are clearly involved in this case. The law, therefore, required that defendants should be sentenced to the Reformatory."

This *Smith* case bears a strong analogy to the case at bar. Not only was the word " may " construed " must " but it further appears that in dealing with the punishment for offenders under the age of sixteen, the word " shall " was used. Nevertheless, the court reached the conclusion that it was not optional with the court or discretionary, but construed the statute as mandatory.

*People* v. *Divine* (5 Park. Crim. 62). In that case the New York statute provided that the Court of Special Sessions " may " be held by any three police justices and that one of their number may be selected to preside. Defendant, Divine, was tried and convicted at a term of the court at which only two judges sat. The court in that case held that the words "may be" were imperative and not discretionary or permissive and that a conviction of the defendant by two judges was without jurisdiction and reversed the conviction.

From the foregoing authorities, it clearly appears that before the court may consider the powers delegated to it by the statute as discretionary, the statute must clearly indicate that option or discretion. So in the case at bar, the court will not assume that the Legislature intended to say that the court may sentence to life imprisonment or, in the alternative, to death.

If that is the intention of the Legislature, this provision of law can be readily amended so that it will leave no doubt as to whether the court in the exercise of a sound discretion may or may not impose the maximum penalty.

A rule of law on construction of legislation well recognized is that it must never be presumed that the Legislature intended a vain thing, but the construction must always be such as to render their enactments effective.

In this connection, it may be argued that if the intention of the Legislature was to vest in the trial judge the discretionary power of fixing the penalty in a felony murder case, there would be no necessity of requiring a jury's verdict with a recommendation of life imprisonment.

In other words, the statute could simply provide that in a felony murder case, where a jury found a defendant guilty of murder in the first degree, a judge would have the discretion as to what penalty should be imposed. In the case under consideration, the Legislature provided that the jury should have the discretion and that they have the right to find the defendant guilty of either murder in the first degree or murder in the first degree with a recommendation of life imprisonment.

It cannot seriously be urged that if a jury deliberates for many hours as to what its verdict should be that that is merely a sug-

gestion or a recommendation which the court may lightly disregard. The jury's recommendation is followed in every other State in the Union and a verdict of a jury in this State is to be received with the same solemnity and the same force and given the same effect. The verdict in this case was not merely a recommendation. As appears from the statute, it is just as important a part of the verdict as the word " guilty." It is a mandate to the court that the punishment should be life imprisonment. To have a judge charge the jury that they may bring in a verdict recommending life imprisonment and then have the jury bring in such a verdict and then have the judge disregard that verdict, would certainly appear illogical. It would tend to shake and weaken the confidence of the jury in the court and the very mischief that this legislation was designed to prevent would not be accomplished.

As above stated, one of the evils that the statute was designed to prevent was to overcome the reluctance of juries to bring in verdicts of guilty in felony murder cases and that with this legislation, they would be more apt to bring in such a verdict.

If the juries of this State learn that their verdicts are not being enforced and that even though they bring in a verdict recommending life imprisonment, the judge may and does frequently disregard the verdict and impose the death penalty, the evil which this statute was designed to cure will again manifest itself.

In the second edition of Black on " Interpretation of Laws " section 158 uses the following language: " Where a statute grants a new right or power, or provides a new remedy, not existing at common law, but wholly created and regulated by the statute, and prescribes the mode of enforcing or pursuing it, its terms are mandatory and not directory (though couched in language which is permissive when taken in its ordinary signification); and that mode of exercising the power or right, or pursuing the remedy, must be followed to the exclusion of all others, and exactly as the statute directs." (*Buck* v. *Danzenbacker*, 37 N. J. L. 359.)

Black, in section 165, in referring to the construction to be given amendments says: " in construing an amendatory statute, the mischiefs or hardships produced by the old law must be considered, together with the remedy proposed by the new."

It thus appears from all of the foregoing that the words " may be sentenced to life imprisonment " are mandatory and the trial judge is without discretion or power to impose any other sentence not in conformity with the jury's verdict.

Defendant George De Renna is sentenced to State's prison for the term of his natural life.