[Criminal No. 879. Filed January 2, 1940.]

[97 Pac. (2d) 543.]

OSCAR TAYLOR, Appellant, v. THE STATE OF ARIZONA, Respondent.

Mr. Marshall W. Haislip, for Appellant.

Mr. Joe Conway, Attorney General, Mr. W. E. Polley, Assistant Attorney General, Mr. Richard F. Harless, County Attorney, and Mr. L. Alton Riggs, Assistant County Attorney, for Respondent.

McALISTER, J.—The defendant, Oscar Taylor, was convicted of statutory rape, alleged to have been committed on or about November 13, 1937, upon the person of one Barbara Hill, and from the judgment and order denying his motion for a new trial he appeals.

Appellant assigns a number of errors but discusses them under four propositions of law, the first and principal one being that the court admitted, over his objections, evidence of acts of sexual intercourse appellant had with other girls than the prosecuting witness, not in her presence. In order that this contention may be intelligently passed upon, it is necessary that the facts bearing thereon be stated. On November 13, 1937, about 7:00 P. M., Barbara Hill, a girl fourteen years of age and living in the 1400 block on east Adams Street, Phoenix, was at the home of a friend, Grace Miller, two blocks east of hers on Adams Street, when appellant came there in a 1937 Dodge sedan. She testified that she, Grace and appellant got into the front seat of the car and drove south on 16th Street to the river where the car was brought to a stop; that thereupon Grace told Barbara, who sat in the middle, that Oscar would give her a dollar if she would have intercourse with him; that she consented and then she and appellant got into the back seat of the car and accomplished the act; that while this was being done Grace Miller remained in the front seat, and when they had completed the act Grace got into the back seat with appellant and permitted him to go through the same performance with her, during which time Barbara sat in the front seat; that the appellant gave them each a dollar and drove back to 16th and Washington Streets where they left the car and went to Grace's home; that she said nothing to her mother about this occurrence. She stated further that she had been to the river with the appellant on two occa-

sions prior to this, that Grace Miller was with her on the first of them and that they went through the same procedure as on November 13th, but that on the second trip she and the appellant went alone to the river, this time to 24th Street, where the second act of sexual intercourse between them took place. He gave her a dollar on each of these occasions.

The latter part of November Barbara ran away from home for a few days and on December 6th, following her return, Miss Lydia Riffle, deputy county probation officer, took her to the county clinic and had her examined by a physician who reported that she had had sexual intercourse with someone but she would not then disclose the person's name. A complaint charging her with being a delinquent was then filed by Miss Riffle and she was placed in the Phoenix Florence Crittenden Home where she remained until December, 1938, when she was transferred to the Convent of the Good Shepherd at which she was staying at the time of this trial. It appears that on April 13, 1938, Miss Riffle learned that appellant was the person with whom she had had sexual relations and immediately thereafter Albert K. King, a deputy probation officer, and Miss Riffle, went to the home of the appellant and brought him to the county attorney's office where he was identified by Barbara Hill, Dorothy Smith and one other girl. At that time he signed a statement prepared by Melbourne W. Hill, deputy county attorney, in which he admitted having had sexual intercourse with Barbara Hill and Grace Miller about the middle of November, 1937, and upon two prior occasions.

Grace Miller stated practically the same facts as did Barbara Hill relative to the latter's first and third trip to the river with appellant, but as she and Barbara left him at the street car track upon their return from the river on November 13th he made some re-

marks on the general subject of sexual intercourse, and in reply to a question as to whether she had a conversation of this character with him at that time, she answered:

"Bill Taylor told me when he wanted to go out, he said he didn't have to run around very much, he always knew where he could go."

She was permitted over appellant's objection to give the following testimony: (1) That she was introduced to appellant by Florence King in front of the latter's home between 14th and 15th Streets on east Monroe Street, and that she, Florence and appellant went that afternoon to the river on 16th Street and that appellant had sexual intercourse with Florence in the back seat of the car and then with her in the same place; that he gave each of them money to buy a dress; (2) that on another occasion appellant drove up to 16th and Washington Streets where she and Dorothy Smith were and that after introducing Dorothy to him they got into the car with him and went to 16th Street and the river where he had sexual relations with both of them in the back seat of the car, one girl sitting in the front seat while he and the other went through the act; (3) that early in 1938 at her home in Phoenix she introduced Lola Ames to appellant and that they got into the car with him and drove on 16th Street to the river where appellant had sexual intercourse with Lola in the car but not with her; (4) that in March, 1938, she had a conversation with appellant in front of her home in which he stated that he had Esther Jackson down at the river bed the night before and had sexual intercourse with her but did not have very good success and wanted to try it again; that he asked her if she would try to get Esther out for him and she told him "no"; that he nearly always carried wine with him and offered it to the girls.

Over appellant's objection, Dorothy Smith testified to practically the same facts concerning her relations with him as did Grace Miller, except that she stated in addition that appellant and Grace drove up to 16th and Washington Streets together and that Grace called her over and introduced her to him, whereupon she got into the car and they drove to the river.

Lola Ames' testimony as to her relations with appellant were the same in effect as that given by Grace Miller. She stated further, however, that she refused appellant when he first asked her and told him it was her sick time and that he said that made no difference; that he attempted it anyway but was only partially successful; that he got blood on his shirt and stated that he would have to throw it away so his mother would not see it.

The testimony of Florence King as to her relations with appellant was substantially the same as that given by Grace Miller, though she stated in addition that she introduced Grace to appellant at his request and upon his promise to buy her cigarettes if she would; that he asked her to have intercourse with him so that other girls would have it also and she told him that she "did not know any more girls"; that Jane Brown and Elsie Brown had prior to that time introduced her to appellant and that upon meeting him she and these two sisters went with him to the same place on the river and that while there she and each of the sisters had sexual intercourse with him in the car; that he gave her peach brandy, whiskey or wine each time she was with him and that she was quite intoxicated when she had sexual relations with him.

It appears from the testimony of Grace that he gave her money and a dress, her brothers and sisters small change at times and her father tobacco. Her mother testified that appellant gave them money for food, some for herself on her birthday and Mr. Miller cigar-

ettes, but that she never saw him give Grace any money, and, according to the father, appellant gave him money and cigarettes, his wife one dollar and the children nickels and dimes.

At the time appellant committed his first act with these girls they were quite young. The record discloses their ages to be as follows: Barbara Hill, 14; Grace Miller 13 or 14; Dorothy Smith, 13 or 14; Florence King, 13 or 14; Lola Ames, 14; Esther Jackson, 11; Jane and Elsie Brown, young girls but exact age not appearing. Inasmuch as it is unnecessary to expose these girls needlessly to unpleasant publicity, their true names have not been used in this opinion.

Appellant, who was fifty years of age at the time of the trial in March of this year, denied that he had had sexual relations with the prosecuting witness or any of the other girls and, as an additional defense to the act charged in the information, testified that he was elsewhere at the time and supported this claim with the testimony of a number of witnesses.

 · The introduction of evidence of acts of sexual relations with girls other than the prosecuting witness is made the basis of the first eight assignments but they are discussed under one proposition, namely, that in the trial of one accused of statutory rape, the girl being under the age of consent, it is error to admit evidence that the accused had sexual relations with other girls than the prosecuting witness, not in her presence, and in support of this statement appellant cites a long list of cases. There is no question but that the general rule is

"that, in the prosecution of one accused of a particular offense, evidence showing or tending to show the commission by accused of another crime entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible." *Dorsey* v. *State,* 25 Ariz. 139, 213 Pac. 1011, 1012.

However, there are several exceptions to this rule and one of them is those cases in which the evidence of similar offenses tends to show a system, plan or scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other, *Vigil* v. *State,* 33 Ariz. 51, 262 Pac. 14; *Cummings* v. *State,* 20 Ariz. 176, 178 Pac. 776, and the state contends that the facts of this case bring it clearly within this exception. It occurs to us that this position is sound, for in the case of rape, either statutory or forcible, evidence of similar offenses which shows that in the commission of the offense the accused used a system or plan, tends just as much to establish the act charged, as does the evidence of similar acts in the case of any other crime. *State* v. *Jenks,* 126 Kan. 493, 268 Pac. 850; *Merritt* v. *State,* 168 Ga. 753, 149 S. E. 46; *People* v. *Cosby,* 137 Cal. App. 332, 31 Pac. (2d) 218; *Suber* v. *State,* 176 Ga. 525, 168 S. E. 585; *State* v. *Hammock,* 18 Idaho 424, 110 Pac. 169.

The first of these decisions, *State* v. *Jenks, supra,* was a case in which the defendant who lived near a school had the habit of inviting girls into his cabin through a back door and giving them small sums of money. Ida Lovin, age twelve, accepted his invitation a number of times and as soon as she was inside he always locked the door, gave her ten cents and on two occasions had sexual intercourse with her. Two other young girls entered his cabin the same way at different times, whereupon he locked the door, put his hands under their clothes and on their persons and each time gave them small pieces of money. In passing on the admissibility of the testimony given by these two girls the court said [126 Kan. 493, 268 Pac. 851]:

"Passing, however, the contention that the objections of defendant were not sufficiently specific to challenge the attention of the trial court, we still must hold that

the testimony itself was admissible as against a specific objection. It was competent to show the lustful disposition of the defendant and the system used by him in taking indecent liberties with young girls, as he had with Ida Lovin. It tended to corroborate the charge upon which he was being tried.''

In *Merritt* v. *State, supra,* the defendant was prosecuted for rape and, in addition to the girl named in the indictment, two others testified as to similar crimes committed by him on them. The court, in holding this testimony admissible, because it showed a motive, plan or scheme, said [168 Ga. 753, 149 S. E. 47]:

''In addition to the female named in the indictment, two others were sworn as witnesses, and they testified to crimes committed by Merritt. The manner of committing the crimes, the location, the circumstances, are all such as to authorize a jury to believe that all were committed by the same man. Merritt was identified as that man. All were in the same neighborhood; two of the three acts were committed in the same alley; in each of the three instances the criminal used a pistol and a flashlight; in every instance he first pursued an unnatural method by applying his mouth and tongue to the private parts of the victim, and then performed an act of sexual intercourse; in each instance he demanded or took money; twice he took money, the other victim chanced to have none. In two cases the victims were alone in their automobiles when Merritt jumped in and pressed his pistol to their bodies, demanding that they keep silent and drive as he directed. In each of these two cases he directed them into the same obscure alley, and forced them from the front to the back seat, where the fiendish act was performed. Under these circumstances the evidence showed a general connected plan or scheme, and was admissible to identify the defendant as the perpetrator of the crime for which he was on trial.''

In *People* v. *Cosby, supra,* Elinor Bothello testified that she went to the apartment of defendant in response to a telephone call answering her advertisement for work and that after talking to him about

the work he wanted her to do and the salary he would pay, the defendant suggested that they gamble with cards to determine whether they would have sexual intercourse. She told him she would not gamble and got up from her chair to leave when he grabbed her and threw her on a couch. He did all he could to accomplish his purpose but she finally got away from him and left. Two other women were permitted to testify that he lured them to his apartment under similar circumstances for the purpose of ravishing them and, in holding the testimony of these two witnesses admissible as tending to show a common plan or scheme, the court, among other things, said [137 Cal. App. 332, 31 Pac. (2d) 220]:

"While it is the general rule that a defendant in a criminal case cannot be tried for any other offense than that with which he is charged in the information, and that evidence of other and distinct offenses is not admissible, still there are exceptions to this general rule, one of which is that where several crimes are committed as part of one scheme or plan, all of the same general character, tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, as tending to show logically that the crime in question was part of such common scheme."

Appellant's statement to one of his victims upon their return from the river on November 13th that when he wanted to go out he did not have to run around very much, for, "he always knew where he could go," was itself, when viewed in the light of the facts she already knew, a disclosure of his plan of operation. According to the evidence his system was to drive in his sedan to the neighborhood of 16th and Adams Streets where the young girls he mistreated either lived or frequently visited, there contact them, and, with the aid of someone with whom he had had

sexual relations, persuade two or more of them to go with him to the river and there permit him to gratify his sexual desires, always in the same manner. He did this on six different occasions, including the one on November 13th. Apparently he made the home of the Miller family with whom, due to gifts to its various members, he was on very friendly terms, or its immediate vicinity, the place for meeting his victims. Grace had been introduced to him in that vicinity by Florence King at his request some time prior to November, 1937, and later upon separate occasions she made him acquainted with Dorothy Smith and Lola Ames. In both instances he immediately took Grace and the one he had just met to the river. In addition, it was Grace who persuaded, or at least aided in persuading, the prosecuting witness, Barbara Hill, to go with her and appellant to the river on Barbara's first trip and who upon reaching the river told the latter that appellant would give her a dollar if she would submit to him. The same thing occurred on Barbara's third trip to the river. As showing still further his use of the girls he had mistreated to help him accomplish his nefarious purpose, he requested Grace, after telling her of his partial success with Esther Jackson the night before and of his desire to make a more successful effort, to try to get her out for him so that he could make a second attempt. There can be no question but that the effect of the testimony that on five separate occasions appellant went to the same neighborhood and persuaded at least two young girls to go with him in his sedan to the same place on the river and there permit him to have sexual relations with each of them in the abnormal, perverted manner the evidence discloses he used is to strengthen the statements of the prosecuting witness that he did the same thing with her.

The court instructed the jury as to the purpose which the evidence of similar offenses against other girls was received, and appellant contends that it stated in effect that he had committed offenses against other girls. The instruction properly states the rule relative to such evidence and we are unable to see any error in it.

Appellant's principal defense was an alibi and he requested an instruction relative to the degree of proof necessary to sustain it. The court refused it but did give one of its own which we think properly covered the question.

At the close of the state's case in chief appellant requested the court to require the state to elect upon which alleged act it would rely in the prosecution. The court declined to do so, for the reason that the offense upon which appellant was being prosecuted was set up in the information, and it was on that and no other that the state relied. In the instructions the court properly limited the purpose for which evidence of offenses similar to that alleged was received. There was no occasion for an election.

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.