DORSEY *v.* THE STATE.

No. 16304. September 7, 1948. Rehearing denied October 13, 1948.

*Harris, Henson & Spence,* for plaintiff in error.

*Eugene Cook, Attorney-General, Paul Webb, Solicitor-General, William Hall, William T. Boyd* and *Dan P. Winn,* contra.

Jenkins, Chief Justice. ■ The general grounds of the defendant's motion for new trial raise the question of the sufficiency of the evidence to corroborate the testimony of the two females against whom the defendant was convicted of the charge of rape; it being conceded by counsel for the defendant that, "In the event there was sufficient corroboration of their respective stories, there is probably sufficient evidence to convict." In this connection, assuming that it is still the rule, as held by a majority of the Justices in *Davis* v. *State,* 120 *Ga.* 433 (48 S. E. 180), that there can be no conviction of any rape unless the testimony of the female is corroborated (but see, in this connection, *Griffith* v. *State,* 176 *Ga.* 547, 168 S. E. 235), it therefore becomes necessary to consider the extent and nature of the corroboration required to support a conviction. The law does not fix the quantum, nor is there any prescribed rule for measuring the amount or extent

of corroboration required. *Lee* v. *State,* 197 *Ga.* 123, 124 (2) (28 S. E. 2d, 465). However, there are certain facts and circumstances which our courts have recognized as indicia of corroboration, such as those stated in *Davis* v. *State,* supra, as follows: "Unless she made some outcry, or told of the injury promptly, or her clothing was torn or disarranged, or her person showed signs of violence, or there were other circumstances which tend to corroborate her story." Ultimately, however, the question as to whether or not the testimony of the female has been corroborated is, like the question of credibility of witnesses, one solely for the jury to determine. *Wright* v. *State,* 184 *Ga.* 62 (190 S. E. 663); *Suber* v. *State,* 176 *Ga.* 525 (2a) (168 S. E. 585); *Smith* v. *State,* 77 *Ga.* 705. For this reason, if there be any corroborative evidence at all, it is not for this court to pass upon its probative value; but the verdict of the jury under a proper charge from the court, having resolved that issue and having the approval of the trial judge, will not be disturbed.

Turning now to the evidence, we shall consider first that of the female, Bertie Mae Kelley, who testified in substance that on the night of January 27, 1947, she, while walking alone on the street, was accosted by the defendant whom she had never seen before. Under threats that she would be killed if she did not accede, she was forced to go behind a nearby house which was occupied by white people. She testified that she scuffled with her assailant on the ground before he accomplished his purpose, which was fully testified to; that immediately after he had released her she went up onto the porch of the people behind whose house the act had occurred; that she was crying; and that she reported the incident to the white people who lived in the house. She later positively identified the defendant in a police line-up of eight other colored men of about the same age and physical characteristics as the defendant. This witness's testimony was corroborated by the white lady to whom the attack had first been reported, as follows: "I know Bertie Mae Kelley. I saw her on January 27th of this year at night. She came into my house crying. She had leaves on the back of her coat. After I had talked to her, I called the police." The detective who investigated the complaint testified: "I went to the scene where she was supposed

to have been raped, on the morning of January 29th; Bertie Mae carried us to a place in the backyard of a house facing Georgia Avenue at the corner of Ami, and there were different footprints and marks on the ground, and a place wallowed out in the ground."

Sara Crumley, the other victim, testified in substance that at about five o'clock in the morning on September 8, 1947, while on her way to work at a girls' home on Washington Street, the defendant whom she had never seen before jumped from behind high bushes on Capitol Avenue and threw a knife around her neck and marched her behind some houses. That under threats of violence he accomplished his purpose, which was fully testified to, and that immediately afterwards, without going to her place of work, she returned to her home and reported the attack to her aunt with whom she was living, and then took a bath before reporting to work; that her dress had been wrinkled and dirtied, and there was dirt on the back of her head. She testified that she had a good look at her assailant, and that she had described him to her employer when she reported to work that same morning. This victim also identified the defendant at a police line-up. This testimony was corroborated as follows: "I am the aunt of Sara Crumley. I live at 93 Rawson Street. I saw Sara Crumley on September 8th this year. When she came home that morning, she was crying and her dress was all dirty in the back. I said go ahead and take a bath. After that she went on off to her work and I went to work." The victim's employer testified: "I know a colored girl named Sara Crumley. I saw her on the morning of September 8th of this year. She came in crying. She was highly nervous. As a result of a conversation with her Mrs. Green called the police, and they came out."

Under the law and the evidence above set out, since it can by no means be said as a matter of law that the testimony of each of the two injured females was not corroborated in some particulars; and since the jury, under a proper charge from the court, has determined to their satisfaction that the corroboration was sufficient to convict, and since that verdict has the approval of the trial judge, it will not be set aside as being without evidence to support it.

■ Grounds one through seven of the amended motion complain of the admission over objection of proof of other crimes

similar to those charged in the indictment; while ground eight complains of the charge of the court with respect to such proof as follows, "I have permitted certain testimony to be offered with reference to other offenses, and I did instruct you at that time that such testimony was admitted solely for the purpose of showing the mind of the defendant and not for any other purpose."

The general rule in criminal cases is that "evidence of the commission of a crime other than the one charged is generally not admissible." *Cawthon* v. *State*, 119 *Ga.* 396 (46 S. E. 897). Yet this court has long recognized exceptions to this general rule, several of which are specifically commented on in the opinion of the *Cawthon* case just cited, where it was said, "While the rule is general and subject to few exceptions, still there are some exceptions; as when the extraneous crime forms part of the res gestæ; or is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; . . or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged." With respect to the above exceptions recognized in the *Cawthon* case, this court in *Frank* v. *State*, 141 *Ga.* 243, 262 (80 S. E. 1016) has pointed out that, "Mr. Justice Cobb, who prepared the opinion of the majority of the court [in the *Cawthon* case], did not attempt to lay down a rule comprehending all possible cases in which evidence might be admissible, although it showed previous crimes." In this connection it has been stated in 1 Wharton's Criminal Evidence, 170, § 42, that "In offenses involving carnal intercourse of the sexes, including adultery, fornication, seduction, rape, and incest, the exception to the general rule has been most liberally extended, and for a reason peculiar to those crimes," and "so it has been repeatedly held that, upon a trial of a charge of having committed any of the crimes known as 'sexual offenses,' evidence of prior acts of the same character are admissible, although such prior act is in and of itself a crime." See also, to the same effect, *McMichen* v. *State*, 62 *Ga. App.* 50, 51 (7 S. E. 2d, 749). In accord with this general principle, stated in Wharton's Criminal Evidence, this court has consistently held in cases involving sexual offenses that evidence of a crime similar to that for which the defendant is on trial is admissible if it tends to show method, plan, or scheme. *Allen* v. *State*, 201 *Ga.* 391, 395 (40 S. E. 2d, 144), and cases there cited. In the *Allen* case it was said: "These

decisions clearly state the rules of law, and there is no room for argument now as to the law. If the method or scheme employed in the commission of the crimes of similar nature were the same, this aids in identification, and proof of other such crimes is admissible." To the same effect see *Barkley* v. *State*, 190 *Ga.* 641 (2) (10 S. E. 2d, 32).

The evidence of other crimes committed by the defendant, and objected to in the instant case, was that of assaults with intent to rape upon two white women. We shall refer only to such portions of the testimony which illustrate the similarity of methods used in all of the attacks, as indicating the defendant's bent of mind with respect to the offense charged. The attacks by the defendant upon the white women occurred in the same general location as that upon one of the colored females, and within short walking distance of that of the other colored female. All of the attacks show a common bent of mind, method, purpose, and procedure, by lying in wait at an hour when the streets are deserted, until a lone female approaches or passes by; three of the attacks having occurred during the early hours of morning, while the other occurred in late evening. In each attack the victim was threatened with death, three by the use of a knife, and the other by shooting. Yet another revealing peculiarity in all of the attacks is disclosed, in that in all cases the attacker after surprising his victims undertakes to force them into areas behind houses or buildings to accomplish his violent purpose. The *modus operandi* here revealed is singular. It differs from perhaps the most common method employed by rapists who steal into a room at night and surprise the victim in bed, or where the attacker either forces his victim into his own car or else forces himself into the car of his victim. Since the testimony of extraneous crimes objected to does in fact show a similarity of method employed by the defendant, and since it reveals a definite state of mind evidenced by a common plan or scheme for gratifying his lascivious desires, under the rulings of law above set forth we conclude that the evidence was admissible as an aid in identification, since that issue was also involved by the defendant's denial that he had ever seen any of the females who testified against him.

It is contended, however, that the similar crimes testified to in the instant case having occurred after the commission of the

crimes for which the defendant was being tried, such testimony should not for that reason have been admitted. We know of no reason in logic or law which would require that proof of other crimes actually tending to identify the defendant through the development of a plan or scheme be limited to only those crimes committed prior to the one for which the defendant was on trial. To exclude evidence of all crimes which might have been committed, even though illustrative of scheme or plan, simply because they occurred only a short while after the crime for which the defendant is actually on trial, would obviously, in all cases where the defendant was tried for the *first offense* committed, make it impossible to show scheme or plan by proof of other crimes, and thus in effect partially nullify this principle of law. The testimony was not, therefore, objectionable on this ground.

It is further urged that, even though proof of other crimes might be admitted in a proper case under exceptions to the general rule, the trial judge in the instant case, by limiting the consideration of the jury to the one purpose covered by his instruction, that is, "solely for the purpose of showing the mind of the defendant," thereby excluded the only proper purpose for which such testimony could be permitted. This exception relates to a point which appears to have already been definitely adjudicated by this court. An almost identical question arose and was objected to on the grounds here urged in *Suber* v. *State*, 176 *Ga.* 525 (1); 529 (168 S. E. 585), where the court held that proof of other crimes might be admissible to show plan, "or bent of mind" of the defendant. In that case, in overruling an objection by the defendant, the court announced the rule which was approved by this court, as follows: "It is admissible to show the 'bent of mind;' not to convict the defendant in this case, but simply as a circumstance for the jury as to whether or not the defendant did not have that 'bent of mind.'" We therefore hold this ground of exception to be without merit.

Ground nine of the amended motion complains of the following argument of counsel for the State: "Gentlemen of the jury, this defendant did not produce a single witness to back him up on his claim of innocence. If he had not been guilty, he could have gotten somebody to testify for him." The defendant in his statement to the jury said, "Everyone that knows me

knows that I would not do a thing like that. . . I have worked for Mr. Collier about three years. . . he knows I would not do a thing like that. I worked at Davison-Paxon's, and the manager up there knows me. He can give an account of me." While it is, of course, true that no *legal presumption* of guilt would arise from the failure of the defendant to introduce witnesses (*Mills* v. *State*, 133 *Ga.* 155, 65 S. E. 368), and while it would, therefore, be error for the solicitor to argue to the jury that such a *legal presumption* did arise from such fact; nevertheless it is perfectly proper for the solicitor to draw an inference of fact from such failure and argue it to the jury even though it be prejudicial to defendant. *Worley* v. *State,* 136 *Ga.* 231, 232 (8) 235 (71 S. E. 153) ; *Summerville* v. *State,* 65 *Ga. App.* 11, 12 (14 S. E. 2d, 574). Under the view we take of the solicitor's remark, we do not think that it was intended to convey an impression to the jury that a legal presumption of guilt could be drawn from the failure of the defendant to produce witnesses, but to the contrary it seems evident that the solicitor was merely arguing a conclusion drawn from the facts recited in the accused's statement, and based upon his failure to produce the witnesses therein referred to.

*Judgment affirmed. Duckworth, Presiding Justice, Candler, Justice, and Judge Lilly concur. Atkinson, Wyatt, and Head, Justices, dissent from headnote 2, from the corresponding division of the opinion, and from the judgment of affirmance.*