354 P.2d 522

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Claudio Clyde VELARDE and Tony Mike Aranda, Defendants-Appellants.**

**No. 6667.**

Supreme Court of New Mexico.

July 28, 1960.

Dean S. Zinn, Santa Fe, for appellants.

Hilton A. Dickson, Jr., Atty. Gen., B. J. Baggett and Boston E. Witt, Asst. Attys. Gen., for appellee.

COMPTON, Justice.

Ray Joe Marquez, Joe Saldonio Valencia, Claudio Clyde Velarde, and Tony Mike Aranda were charged with having raped

one Eva Nez. The victim was an Apache Indian. The cause was tried to a jury of San Juan County. Valencia was acquitted and the remaining defendants were found guilty. A motion for a new trial having been denied, judgment was entered and, from the judgment and sentence pronounced against them, Velarde and Aranda appeal.

Since the sufficiency of the evidence to sustain the verdict of the jury and the judgment entered thereon is not challenged, we deem it unnecessary to discuss the evidence extensively. The question presented is whether the admission into evidence of prior acts of misconduct by appellants constitutes prejudicial error.

The offense allegedly occurred about a mile north of Blanco, New Mexico, at about midnight July 3, 1958. The defendant Valencia was represented by attorneys Cain and Morgan. The remaining defendants were represented by Herman A. Daugherty and La Vor W. Burnham. The defendants attempted to establish an alibi as a defense, claiming that they were in the Blanco bar, or dance hall adjacent thereto, at the time the offense was allegedly committed. Lloyd Garcia, who was tending bar at the Blanco bar that night, was called as a witness for Valencia. On direct examination conducted by Mr. Cain, Garcia testified that Valencia was at the bar at the time of the alleged offense; that he arrived around 8:00 P.M. July 3, 1958, and remained at least until closing time, 1:30 A.M. July 4, 1958. He was then cross-examined by appellants' counsel, testifying as follows:

"Q. Mr. Garcia, to the best of your recollection, do you know whether Mr. Aranda was in the bar at about two o'clock in the morning, that night? A. Well, I know he had been in there, he came in at about eleven o'clock, it was plain when he came in, I remember that very well *because he and I had had some differences and I kept my eye on him, and that is the reason I remember* that he came in there that night, *him and Velarde both.*" (Emphasis ours.)

On cross-examination by Mr. Milling, Assistant District Attorney, the following proceedings were had:

"Q. You say you had had some differences with Aranda? A. Right.

"Q. What sort of differences?

"Mr. Burnham: I object unless it is tied in.

"Court: Overruled, this is cross-examination.

"Mr. Milling: What sort of differences?

"A. Well, a month before that I broke up a little party they had had.

"Q. What kind of a party? A. Do I have to answer these questions, your Honor?,

"Court: Answer the question.

"A. Well, I heard some noise in the back of the bar and I got up and they were abusing a Navajo squaw.

"Q. How were they abusing her? A. Well, there was a little boy laying on the floor bloody and the squaw had part of her clothes off.

"Mr. Burnham: I ask that this be stricken.

"Court: Denied.

"Mr. Milling: Go ahead.

A. Well, and the girl, she knew me and she came running to me right away, and they left.

"Q. When you say 'they', who? A. Aranda and Velarde.

"Q. The one in the black leather jacket and the one in the overcoat? A. Right.

"Q. How were they abusing this squaw? A. When I went in she was cowering in the corner, and when she recognized me she came running to me and they started backing away from me and Mike went back to his truck and—all this went on in the dance hall after a dance Saturday night—one of them went and sat in his truck and Velarde took off on the old Aztec road, and when I caught him I put a flash-light to his face.

"Q. This was Velarde? A. Right.

"Q. Was Aranda with him? A. No,—and when I put a flashlight to his face I asked Mary if it was him and she said—I told her to speak and she said it was, and then I abused him physically after that.

"Q. Who was the squaw? A. Mary Tsosie.

"Mr. Burnham: I would like to renew my objection again, and there has been no time set, and ask that the testimony be stricken.

"Court: Overruled."

Appellants contend that they should have been granted a new trial because of the admission into evidence of a collateral offense. We agree. It is a general rule that evidence of collateral offenses, though similar in character, are inadmissible in a criminal prosecution to establish a specific crime, State v. Nelson, 65 N.M. 403, 338 P.2d 301; State v. Lord, 42 N.M. 638, 84 P.2d 80; State v. Bassett, 26 N.M. 476, 477, 194 P. 867; State v. Starr, 24 N.M. 180, 173 P. 674; Commonwealth v. Kline, 361 Pa. 434, 65 A.2d 348; Henderson v. State, 94 Okl.Crim. 45, 230 P.2d 495, 23 A.L.R.2d 1292; State v. Amundsen, 37 Wash.2d 356, 223 P.2d 1067, 21 A.L.R.2d 1082. While this rule is qualified by a number of exceptions, State v. Bassett, supra; State v. Lord, supra; State v. Starr, supra; State v. Borrego, 52 N.M. 202, 195 P.2d 622; State v. Whitener, 25 N.M. 20,

175 P. 870; State v. Allen, 163 Kan. 374, 183 P.2d 458; State v. Ferrand, 210 La. 394, 27 So.2d 174, 167 A.L.R. 559; People v. MacDonald, 53 Cal.App. 488, 200 P. 491; State v. Russ, 4 W.W.Harr. 379, 34 Del. 379, 153 A. 545, the case does not present an applicable exception to the general rule of exclusion.

We conclude that the court erred in admitting on cross-examination evidence of another offense. It was wholly irrelevant and could serve no purpose other than to show a disposition on the part of the appellants to commit the crime with which they were charged. Of course, it was inadmissible for this purpose when the appellants had not first placed their reputation in issue.

But the state says the appellants, on cross-examination of the witness Garcia, having opened up the subject, the district attorney properly pursued the matter on its cross-examination of the witness. We cannot agree that the questions asked by appellants' counsel, or the response thereto, opened up the line of testimony that followed. The answer of the witness Garcia to the effect that he and Velarde had been in the bar about 11:00 P.M. was not responsive, and the balance of his answer as to why he remembered was gratuitously volunteered and probably could have been stricken on motion. However, the fact that no motion was made did not leave the matter open for unlimited questioning concerning details of the differences between Garcia and appellants. While the objections interposed were not fully and clearly stated, nevertheless, enough was said to alert the mind of the court of the impending prejudicial error.

The judgment is reversed with direction to the lower court to grant appellants a new trial, and it is so ordered.

McGHEE, C. J., and CARMODY and MOISE, JJ., concur.

CHAVEZ, J., not participating.