## STATE v. JOHN BOOKER ARRADONDO.

110 N. W. (2d) 469.

August 4, 1961—No. 38,181.

*John Booker Arradondo,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Chester Durda,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant appeals from his conviction of the crime of carnal knowledge and abuse of a female child under the age of 18 years. On appeal he asserts that (1) the court erred in receiving a confession made by him to a police officer after his arrest; (2) the court erred in "excluding all members of the petitioner's race (Negro) from the jury" and that statements to the jury that there should be no prejudice because of defendant's color or because the girls involved were white deprived him of a fair trial; (3) the court erred in allowing testimony of two girls as to other acts of defendant which had no relation to the charge upon which he was being held; and (4) no warrant was issued for his arrest.

The evidence indicates that sometime during March or April of 1957 defendant had sexual intercourse with the prosecutrix, then 14 years of age, in an apartment in north Minneapolis. This girl testified

that this was her first act of this kind and that defendant had accomplished it by using force upon her. She testified further that for 16 months she was sent to the Home of the Good Shepherd as a juvenile delinquent; that on September 23, 1959, and on October 5, 1959, she again had sexual intercourse with defendant at his brother's home in Minneapolis; that she was then 16 years of age; that defendant at times had discussed marriage with her; that he had talked about getting girls to "hustle" for him; and that she had talked with defendant sometime in October 1959 and had then told him that she thought she might be "sent up again" and that he would be involved, but that defendant had not seemed worried about it and had said that the law "couldn't do anything to him."

Two other girls, each 16 years of age, testified against defendant. Testimony of one of these girls was that defendant had had sexual intercourse with her in the months of March, April, May, June, July, and August of 1959, mostly at the homes of his cousin and his mother in Minneapolis; that he had discussed the subject of marriage with her and had said that he needed money and wanted her to go on the streets working for him as a prostitute. The other girl testified that about the middle of October 1959 she had had sexual intercourse with defendant at her apartment in Minneapolis; that he had talked about their getting married; and that he had told her she should go out on the streets for herself so that she could get the things she wanted.

In a written statement signed by defendant made to the police on November 3, 1959, shortly after his arrest, defendant admitted that he had had sexual intercourse with the prosecutrix on October 5, 1959, in Minneapolis; that at about that time he had had sexual intercourse with one of the other two girls testifying; and that he knew at the time that each of these girls was of the age of 16 years.[1] The

---

[1] The proceedings relative to this statement were as follows:
"BY MR. DURDA [attorney for the state, to police officer]:
"Q * * * Can you tell us what State's Exhibit A is?" "A That is a statement I took from Mr. Arradondo relative to this offense and others.

* * * * *

"Q Is this the defendant's signature on State's Exhibit A?" "A Yes, it is.

police officer also testified that before he took the written statement from defendant he had asked defendant similar questions and received similar answers to those included in the statement. Defendant did not take the stand nor deny any of the testimony outlined above.

Defendant's trial in district court commenced and was completed on November 23, 1959. After a short deliberation, the jury returned a

---

"Q And did the defendant also sign it, acknowledging that he had received a copy thereof?" "A Yes, he did.

\* \* \* \* \*

"MR. DURDA: We offer State's Exhibit A in evidence.

"MR. BANK [counsel for defendant]: Objected to as incompetent, irrelevant, immaterial, no proper foundation laid.

"THE COURT: A copy was given to the defendant?

"THE WITNESS: Yes, it was.

"THE COURT: Before he made his statement you talked to him and told him he was under no compulsion to make the statement?

"THE WITNESS: Yes, sir.

"THE COURT: No promises or threats were made to get him to make the statement?

"THE WITNESS: No, sir.

"THE COURT: Objection overruled. It may be received."

The statement indicated the following questions and answers by police officer W. V. Masica:

"Question: What is your name?" "Answer: John Booker Arradondo.

\* \* \* \* \*

"Question: Mr. Arradondo, I am going to take a statement from you regarding a complaint received by our department wherein it is alleged that you had sex relations with \* \* \*. You know your rights. It is not necessary for you to give the statement. In the event you do, it may be used for or against you in court. Do you still wish to give a true statement?" "Answer: Yes."

(Here followed interrogatories and answers wherein defendant admitted having had intercourse with prosecutrix and one of the other two girls described and that he knew that they were each of the age of 16 years at the time.)

"Question: Is this a true statement?" "Answer: Yes.

"Question: Given of your own free will and accord without threats or promises?" "Answer: Yes.

"Question: \* \* \* after \* \* \* you have had a chance to read it, will you sign it as a true statement?" "Answer: Yes."

The statement was signed as follows:

verdict of guilty on that date. On January 20, 1960, after a presentence investigation,[2] the court sentenced defendant as follows:

"THE COURT: It is the sentence of this Court that you, John Booker Arradondo, for the crime of Carnal Knowledge and Abuse of a Female Child, of which you have been found and adjudged by a verdict of the jury of guilty heretofore entered herein, and of which you are hereby adjudged guilty, be sentenced to the Youth Conservation Commission of the State of Minnesota until by them discharged under due process of law.

"Your record, Booker, or your difficulty has been one of not working, seeking out these young girls, and I am convinced that as they say, although you deny it, that you have led many of them to believe that you had an interest in marriage, and you have tried to get them to hustle for you. You deny that, I know, but all of them tell the

---

"John Booker Arradondo * * * November 3, 1959. The time 1:20 p. m. * * *.

"I, John Booker Arradondo, hereby certify that I have received one true and correct copy of my foregoing statement consisting of three pages. [Signed] John Booker Arradondo."

[2]The inquiry by the court after the presentence investigation included the following:

"Q You were convicted by the jury, and I understand that you now admit that you did have intercourse with * * * [the prosecutrix] on October 5th * * *?" "A I admitted that before, sir.

"Q And you also admit that you had intercourse three times in October with * * * [the second witness] is that right?" "A Yes.

* * * * *

"Q * * * I understand that it was your feeling, expressed after conviction by a jury here, that you were only convicted because you were colored, is that right; that a white boy wouldn't have received the treatment you received?" "A I didn't see where I was receiving any treatment. I said that I had had intercourse with her, and I was guilty of having intercourse.

"Q But you claim you thought you were being abused because of your color?" "A I asked the question if I had a chance because of my color.

"Q [By the court] * * * if a white boy had done the things that the records show you have done, he would have been in trouble long before you were."

same story. Some of them say that they did on occasion. You haven't worked; you haven't earned hardly an honest dollar since you got out of school or before. It is time you straightened up your thinking. You have been in trouble as a juvenile, and that hasn't seemed to straighten you out, although when you are in confinement you seem to adjust pretty well. I am sorry that you feel you are being treated any differently because you are of the colored race than if you were white, but I can assure you that any young man with your record of the white race would have been in trouble a long time before you were, in my judgment, and be treated a lot more severely than you have been. You could have been charged very clearly with at least six offenses similar to the one that you were charged and convicted of."

■ We find no error in the court's reception of the typewritten statement signed by defendant wherein he confessed his guilt. It was made voluntarily to a police officer shortly after defendant's arrest. It was not taken until after he had been advised that he was under no compulsion to give it and that it might be used against him at his trial. He acknowledged receipt of a copy thereof by endorsement thereon to such effect pursuant to Minn. St. 611.033. It is well established that a confession not induced by threats of harm or promise of favor or reward is admissible in evidence. State v. Potoniec, 117 Minn. 80, 134 N. W. 305; State v. Nordstrom, 146 Minn. 136, 178 N. W. 164; 5 Dunnell, Dig. (3 ed.) § 2462. Whether a confession was given under such circumstances ordinarily is for the trial court, and its determination in this respect will not be reversed unless it is manifestly contrary to the evidence submitted to establish that the confession was obtained without threats or compulsion and after defendant had been fully advised as to his rights with respect thereto. State v. Nelson, 199 Minn. 86, 271 N. W. 114; State v. Schabert, 218 Minn. 1, 15 N. W. (2d) 585. Examination of the record here clearly establishes that the court's action in receiving defendant's confession in evidence was proper under the principles above set forth.

■ There is nothing which even slightly suggests that the jury panel, from which the jurors selected to try defendant were drawn, was impaneled contrary to constitutional or statutory requirements; or

that prejudicial statements to the jury deprived defendant of a fair trial because of his race. But even if there were evidence that constitutional or statutory provisions had been violated in drawing the panel, it would have been incumbent upon defendant to challenge in writing before it was sworn and to specify the facts upon which the challenge was based. § 631.23; State ex rel. Passer v. Renville County Board, 171 Minn. 177, 213 N. W. 545, 52 A. L. R. 916; 10 Dunnell, Dig. (3 ed.) § 5248. It is well established that in the absence of fraud or collusion an objection to a jury panel made subsequent to its verdict comes too late. State v. Quirk, 101 Minn. 334, 112 N. W. 409.

Here, the absence of evidence that defendant's jury was not properly impaneled; or that any voter was excluded therefrom because of his race or color; as well as the failure to make any challenge to it prior to its being sworn compels the conclusion that defendant's conviction was entirely valid.

■ We have scrupulously examined the record, which includes a transcript of all testimony adduced at the trial, to ascertain whether any testimony, statements, instructions, arguments, or other proceedings therein were prejudicial to defendant because of his race or color. We find none. The only references to defendant's race were made by defendant's counsel in his argument to the jury wherein he stated:

"* * * The fact the man is colored and the girl is white, you agreed to eliminate sympathy as far as color is concerned or any prejudice of any kind. We just want you to try the case solely on the evidence that came out of that chair, * * *"

and by counsel for the state who made reference thereto in his argument as follows:

"* * * Well * * * whether he be white, colored, red or yellow, he would get the same kind of trial in this courtroom. There is no prejudice here, and when you weigh this decision in your mind there is no place for sympathy, * * *."

The court in its instructions merely charged the jury:

"* * * Our purpose now and the only one we have before us

is to determine the guilt or innocence of this particular defendant on the charge here brought against him under the evidence you have heard."

Nowhere throughout the trial was any claim made by defendant or his counsel that because of the statements above described, or because of anything else that occurred at the trial, the jury became prejudiced against defendant because of his race. Obviously, his racial background should not permit him to escape the punishment fixed by law for his criminal acts. As the court advised him subsequent to the verdict and at the time of sentencing:

"* * * I can assure you that any young man with your record of the white race would have been in trouble a long time before you were * * * and be treated a lot more severely than you have been. You could have been charged very clearly with at least six offenses similar to the one that you were charged and convicted of."

■ We find no error in admitting the testimony of two 16-year-old girls as to similar criminal acts of defendant. He had had sexual intercourse with these two girls, each of the age of 16 years, at about the same time that he had had sexual intercourse with the prosecutrix, also then 16 years of age. Such testimony clearly established a common plan or scheme of defendant to commit acts of this nature at about the same date as he committed the act for which he was on trial. It established further that he had discussed marriage with each of these witnesses, and had advised each of his need for money, coupled with the suggestion that each engage in "hustling" or prostitution to obtain money. The principles governing the admission of testimony of this kind are well established. State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380. As this court stated in State v. DePauw, 246 Minn. 91, 95, 74 N. W. (2d) 297, 300:

"* * * where we have a common pattern as disclosed by the evidence here, it would hardly do violence to the exception to the general rule to recognize that defendant had a purpose of abusing small children in his neighborhood while they were in his house."

Here the rule thus expressed was particularly applicable.

■ Defendant asserts that no warrant was issued for his arrest and that accordingly his conviction was invalid. This is in direct conflict with the record which clearly establishes that a warrant dated November 4, 1959, was issued on that date by the municipal court of the city of Minneapolis and filed with the clerk of said court on November 5, 1959, and with the clerk of the District Court of Hennepin County on November 18, 1959. It was issued upon a complaint signed by the father of the prosecutrix who charged defendant with carnal knowledge of his daughter, then under the age of 18 years. See, State v. Binder, 190 Minn. 305, 251 N. W. 665; State v. Johnson, 216 Minn. 427, 13 N. W. (2d) 26, 155 A. L. R. 23.

■ Defendant asserts that the prosecutrix has recently signed an affidavit in which she set forth that her testimony was false. While it is doubtful if there is presently any basis for our consideration of this contention, it may be said that in view of the record and defendant's admission, both before trial and after trial, as to his guilt of the crime involved little weight could be given to the affidavit described. State v. Upson, 162 Minn. 9, 201 N. W. 913; State v. Gleeman, 170 Minn. 197, 212 N. W. 203; State v. Chick, 192 Minn. 539, 257 N. W. 280.

Reference is made to the general rule expressed in Annotation, 158 A. L. R. 1062, that:

"* * * the courts, with their experience with witnesses, generally pay but little regard to the statements of a recanting witness, and only in extraordinary and unusual cases will a new trial be allowed because of the recanting statements."

Affirmed.