448 P.2d 175

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Paul Andrew MASON, Defendant-Appellant.**

**No. 95.**

Court of Appeals of New Mexico.

Aug. 30, 1968.

Rehearing Denied Nov. 21, 1968.

Writ of Certiorari Denied Dec. 5, 1968.

John R. Cooney, Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for defendant-appellant.

Boston E. Witt, Atty. Gen., David R. Sierra, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

OMAN, Judge.

This is an appeal by defendant from convictions of the crimes of sexual assault and attempted rape of a child.

Defendant relies upon fourteen separate points for reversal. By his first point he claims reversible error in the admission of testimony by witnesses concerning other criminal acts by defendant, which have no connection with the offenses with which he was charged and convicted.

We are of the opinion that his first point is well taken and is determinative of this appeal.

The material facts are that defendant was charged by information consisting of ten separate counts. All counts concerned claimed sexual offenses involving four girls under the age of sixteen years. The State elected to try defendant on two counts. One of these counts involved a sexual assault upon an eleven year old child, and the other involved attempted rape of a twelve year old child.

The other two girls upon whom the defendant had allegedly committed sexual offenses were fifteen years of age. The information charged defendant with having sexual relations with these two fifteen year old girls, with indecent handling or touching of them, and with causing or encouraging their delinquency.

Upon the State's election to proceed to trial upon the two charges involving the eleven and twelve year old girls, the defendant filed in open court at the commencement of the trial a motion "to suppress and disallow any testimony at the trial of" the two fifteen year old girls, and also of two other persons whose testimony was never offered. The motion was denied and the court proceeded immediately with the trial.

In the State's opening statement to the jury the four girls were named. It was stated that the evidence would show that the two younger girls resisted the efforts of defendant to have sexual relations with him, but some of the girls, all of whom were babysitters for defendant and his wife, did engage in sexual intercourse with defendant.

When the first witness called by the State was asked why "all these girls were obtained for babysitting," defendant objected that any testimony about the other two girls (the fifteen year olds) not named in the counts upon which defendant was being tried was not relevant or material to any issue in the case. This objection was sustained, but on other grounds.

Thereafter, the State produced the fifteen year old girls as witnesses. The one testified she was employed by defendant and his wife to do housework in July of 1966, that during the third week of her employment she had sexual relations with defendant, and she engaged in such relations on three different occasions. Defendant testified this girl was employed between the approximate dates of June 20 and July 12. This witness was not employed as a babysitter for defendant and his wife.

The other girl testified she was employed as a babysitter by defendant and his wife and she had sexual relations with defendant on two different occasions. Defendant testified this girl was employed on September 18, 1966 as a babysitter and was so employed on one or more subsequent occasions during the same month. Thereafter defendant saw her during the month of January 1967, but she was not then employed by defendant and his wife.

Defendant as a part of his defense denied having sexual relations with either of these girls.

■ Although no objection was made to the testimony of either girl at the time she was testifying, we are of the opinion that the nature of the charges against defendant involving these two girls, the motion to suppress their testimony, the opening statement by the State, and the subsequent objection to any testimony concerning these two, when taken together, were sufficient to alert the mind of the court to the objections of defendant to this testimony. See State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960). Defendant's objections were not waived because they were not repeatedly asserted. Martin v. State, 80 Nev. 307, 393 P.2d 141 (1964).

As already stated, the evidence shows the claimed sexual acts testified to by the two fifteen year old girls apparently occurred in July 1966 with the one girl and in September 1966 with the other girl. The act of sexual assault of which defendant was convicted apparently occurred about October 15, 1966, and the acts of attempted rape of which defendant was convicted apparently occurred between about November 15, 1966 and December 23, 1966.

■ Ordinarily proof of a distinct offense independent of the offense with which the accused is charged and for which he is being tried is not admissible. Martin v. State, supra; State v. Velarde, supra; 1 F. Wharton, Criminal Evidence § 232 (12th ed. 1955).

However, there are exceptions to this rule. State v. Velarde, supra; State v.

Bassett, 26 N.M. 476, 194 P. 867 (1921); State v. Whitener, 25 N.M. 20, 176 P. 870 (1918); 1 F. Wharton, Criminal Evidence §§ 233-244 (12th ed. 1955). The State in its opening statement announced that testimony would be offered to show "a broad plan, scheme, and design employed by the defendant and others to obtain and entice" young girls into defendant's home to induce them to engage in sexual intercourse. The others referred to as participants in this plan were defendant's wife and another woman who was employed by and living with defendant and his wife. This other woman was the State's first witness, and she testified to events which pointed rather clearly to such a plan, scheme or design.

The evidence shows no physical force or violence was used by defendant in committing the offenses with which he was charged and convicted or in consummating his sexual relations with the two fifteen year old girls.

The State argues before us that the testimony of the two fifteen year old girls, that they engaged in sexual relations with defendant, was admissible as indicating "a plan or scheme or mode of behavior under the rule announced in" State v. Lord, 42 N.M. 638, 84 P.2d 80 (1938), and State v. Bassett, supra. The decisions in those two cases lend no support to the State's position in the present case. There is set forth in the opinions in these cases the general rule which excludes evidence of distinct and independent offenses, and then there are recited the exceptions thereto, or, as indicated by the court, certain elements, conditions or circumstances which are a part of the rule itself, under which evidence of other offenses is admissible.

In the Lord case the court held the evidence of the distinct and independent offenses was objectionable, but no proper objections had been made. In the Bassett case the court held "that the evidence of the second abortion was inadmissible and should be excluded upon any future trial."

We appreciate that the State did not cite these cases to show that the results therein reached support the admissibility of the evidence here in question, but only for the general rule and exceptions thereto which were defined and recited therein. We note the results in these cases only to avoid any suggestion that these results lend support to the State's position in the present case.

■ We are of the opinion that the rule applicable in New Mexico to the facts of this case was announced in State v. Velarde, supra, wherein it was stated:

"Appellants contend that they should have been granted a new trial because of the admission into evidence of a collateral offense. We agree. It is a general rule that evidence of collateral offenses, though similar in character, are inadmissible in a criminal prosecution to establish a specific crime, State v. Nelson, 65 N.M. 403, 338 P.2d 301; State v. Lord, 42 N.M. 638, 84 P.2d 80; State v. Bassett, 26 N.M. 476, 477, 194 P. 867; State v. Starr, 24 N.M. 180, 173 P. 674; Commonwealth v. Kline, 361 Pa. 434, 65 A.2d 348; Henderson v. State, 94 Okl. Crim. 45, 230 P.2d 495, 23 A.L.R.2d 1292; State v. Amundsen, 37 Wash.2d 356, 223 P.2d 1067, 21 A.L.R.2d 1082. While this rule is qualified by a number of exceptions, State v. Bassett, supra; State v. Lord, supra; State v. Starr, supra; State v. Borrego, 52 N.M. 202, 195 P.2d 622; State v. Whitener, 25 N.M. 20, 175 P. 870; State v. Allen, 163 Kan. 374, 183 P.2d 458; State v. Ferrand, 210 La. 394, 27 So.2d 174, 167 A.L.R. 559; People v. MacDonald, 53 Cal.App. 488, 200 P. 491; State v. Russ, 4 W.W.Harr. 379, 34 Del. 379, 153 A. 545, the case does not present an applicable exception to the general rule of exclusion.

"We conclude that the court erred in admitting on cross-examination evidence of another offense. It was wholly irrelevant and could serve no purpose other than to show a disposition on the part of the appellants to commit the crime with which they were charged. Of course, it was inadmissible for this purpose when

the appellants had not first placed their reputation in issue."

The rule adopted in the Velarde case is in accord with the general or majority rule that evidence of similar sex offenses committed with or upon persons other than the prosecutrix is ordinarily inadmissible. 1 F. Wharton, Criminal Evidence § 242 (12th ed. 1955). (It is generally held that evidence of the commission of, or attempt to commit, statutory rape, fornication, seduction, incest, or sodomy upon or with a person other than prosecutrix is inadmissible); Annot., 167 A.L.R. 565, 588, 598 (1947); Annot., 77 A.L.R.2d 841, 859, 875 (1961). See also People v. Stewart, 85 Cal. 174, 24 P. 722 (1890); People v. Greeley, 14 Ill. 2d 428, 152 N.E.2d 825 (1958); State v. Smith, 250 Mo. 274, 157 S.W. 307 (1913); State v. Pace, 187 Or. 498, 212 P.2d 755 (1949); State v. Winget, 6 Utah 2d 243, 310 P.2d 738 (1957).

As stated in State v. Lord, supra, "[t]he courts are not divided upon these abstract rules, but are in hopeless confusion in their application to particular facts." This appears to be particularly so when the evidence is offered to show a plan, scheme, design or mode of behavior. Unquestionably, there are cases from other jurisdictions which, on the basis of the facts therein involved, appear to be directly in conflict with the rule we announce and the result we reach herein.

Although the facts of the case are entirely unlike those in the present case, we believe the language of the court in Morgan v. United States, 355 F.2d 43 (10th Cir. 1966), cautioning against the unwarranted admissibility of evidence of other crimes, is particularly appropriate herein. The court there stated:

"Evidence of other crimes than the one charged must however have a real probative value, and not just a possible worth on issues of intent, motive, absence of mistake or accident, or to establish a scheme or plan. These are the key words which express the purpose for which an exception to the general exclusionary rule is applied under prior decisions. The words are however not without limit as to breadth and meaning. They must be and will be realistically and closely defined and limited. They cannot become an occasion or excuse or device for offering evidence of other crimes which have little or no real probative value or which is cumulative. This matter is obviously a most sensitive one for the accused and for the trial court. The risk and danger is great, and this must be recognized when considering the probative value of such evidence of specific acts offered to prove the crime charged."

Admittedly, the testimony of the two fifteen year old girls has some probative force as to a plan, scheme or mode of operation, but it is particularly persuasive as to defendant's bad character, his licentious disposition, and his lustful propensity to commit sexual offenses upon young girls. Because of the emotional persuasiveness of evidence involving sex offenses with or upon children, the evidence of similar but distinct offenses with or upon other children should ordinarily be excluded. The danger or prejudice so often outweighs the permissible probative value of such evidence. This does not mean such evidence may not properly be received if it is relevant to, and its probative force is sufficiently great upon, some material element of the crime charged which is in issue and upon which there is doubt, such as identity, intent, knowledge, etc. Williams v. State, 110 So.2d 654 (Fla.1959); Dorsey v. State, 204 Ga. 345, 49 S.E.2d 886 (1948); Watts v. State, 229 Ind. 80, 95 N.E.2d 570 (1950); State v. Brooks, 235 S.C. 344, 111 S.E.2d 686 (1959); Turner v. State, 187 Tenn. 309, 213 S.W.2d 281 (1948); State v. Goebel, 40 Wash.2d 18, 240 P.2d 251 (1952). We mean only that such evidence should not be received when very probably its sole result, or at least its overwhelming result, will be that of establishing defendant's bad character, or his disposition or propensity to commit crime, as the basis for an inference that he committed the crime with which he is charged and for which he is being tried.

Of course, the rule would be otherwise if defendant had first put his character in issue (1 F. Wharton, Criminal Evidence § 221 (12th ed. 1955); State v. King, 342 Mo. 975, 119 S.W.2d 277 (1938); State v. Velarde, supra); or had first contended the presence of the prosecutrices and the other girls in his home was innocent and for only proper and legitimate reasons (State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A.L.R. 1061 (1929); or the prior offenses were so close in time as to constitute a part of the res gestae (State v. Brooks, supra; Gephart v. State, 157 Tex.Cr.R. 414, 249 S.W.2d 612 (1952).

■ We are of the opinion that under the facts of this case the testimony of these two fifteen year old girls as to their prior sexual relations with defendant was inadmissible and prejudicial, and consequently the case must be reversed and defendant granted a new trial.

We have not overlooked the many other points raised by defendant, but doubt that on a retrial the matters giving rise to those points which possibly have merit are likely to be repeated.

The judgment is reversed and the cause is remanded with directions to grant defendant a new trial. It is so ordered.

SPIESS, C. J., concurs.

ARMIJO, J. (dissenting).

ARMIJO, Judge (dissenting).

I disagree with the conclusion reached by the majority because appellant failed to make timely objection to testimony which he considered prejudicial, and because such testimony was properly admissible.

For purposes of discussing my position the following relevant facts are stated.

Appellant caused an advertisement to be published in a newspaper for an unwed expectant mother to live in and do light housework.

Mason claims his action was motivated by charitable and humanitarian reasons.

A girl named Lucy, who possessed the necessary qualifications, applied for the position and was received into the Mason household. It soon developed that in addition to household duties, Lucy was prevailed upon to engage in more intimate relations with her benefactor (extending over a period of several months) and also to engage in pandering in order to satisfy his lust for young girls. Mason admits to the foregoing, except that he denies any involvement insofar as the young girls are concerned.

After the state elected to try Mason on two of ten charges, he filed a pre-trial motion seeking to suppress and disallow at trial any testimony of four persons because "said witnesses can have no testimony in any way material to these counts."

No testimony or evidence was offered or tendered in support of the motion and the trial court overruled it. Obviously appellant knew the nature of the testimony sought to be excluded since during trial he made reference to a transcript of testimony given by two of these witnesses at a preliminary hearing.

The majority concludes the pre-trial motion, references made during opening argument and a motion which was sustained had the effect of alerting the trial judge to the error which allegedly occurred during the trial. In this I disagree.

The Texas court in considering a case on somewhat similar facts, concluded that a pre-trial motion to suppress anticipated testimony should not be allowed simply because in the absence of supporting evidence, the court has no way of knowing if the testimony is admissible or not. Johns v. State, 155 Tex.Crim. 503, 236 S.W.2d 820 (1951); State v. Hawthorne, 49 N.J. 130, 228 A.2d 682 (1967). See also Annot., 94 A.L.R.2d 1087 (1964).

Trial courts should not be required to submit to a dress rehearsal in order to furnish a defendant the opportunity to explore the state's evidence and obtain the court's ruling in advance of trial. The better rule seems to be to test the admissibility of testimony when it is offered.

Aside from the pre-trial motion to suppress, the only other objection registered to

testimony of the two witnesses complained of, was when Lucy was testifying, and this objection was sustained.

The two girls, whose testimony appellant had earlier complained of and referred to in his pre-trial motion, were called as witnesses for the state and testified without objection, and appellant cross-examined these witnesses at length, which indicates this was part of his trial tactics. Appellant gave silent approval to the state's course of conduct. As stated in Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943):

"* * * We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him. * * *"

The law seems to be well settled that in the absence of timely objection, the claimed error is waived. See State v. Alford, 26 N.M. 1, 187 P. 720 (1920).

In State v. Lord, 42 N.M. 638, 84 P.2d 80 (1938), a murder case, a confession was admitted over timely objection. Our Supreme Court held it was not a proper objection, stating:

"But notwithstanding this objectionable matter regarding other unrelated crimes in Michigan and Texas could have been excluded upon proper objection, no such objection was made. The question therefore was not presented to and ruled upon by the district court, and therefore cannot be considered here. * * *"

See also Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892); Morgan v. United States, 355 F.2d 43 (10th Cir. 1966); Johns v. State, supra.

In State v. Bassett, 26 N.M. 476, 194 P. 867 (1921), referred to by the majority as authority for the proposition that evidence of a separate and distinct offense was inadmissible, the trial court had admitted the testimony over strenuous objection interposed throughout the trial.

In State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960), also cited by the majority,

objections were interposed during the time the witness was testifying. The court said:

"* * * While the objections interposed were not fully and clearly stated, nevertheless, enough was said to alert the mind of the court of the impending prejudicial error."

The record contains ample testimony upon which the jury was warranted in convicting appellant, independent of the testimony given by the two witnesses complained of.

Assuming the testimony complained of was objectionable it was not prejudicial to the degree resulting in fundamental error.

It does not shock the conscience to permit the conviction to stand. State v. Reynolds, 79 N.M. 195, 441 P.2d 235 (Ct.App.1968). Rather it shocks the conscience to reverse.

Admittedly, if the testimony given by these two witnesses was objectionable, the same should have been excluded upon timely objection being made.

However, as observed by the majority opinion, Lucy "testified to events which pointed rather clearly to a plan, scheme or design" it would then follow that the testimony was proper under the exception to the rule which otherwise precludes such evidence.

The argument that the two witnesses complained of testified to other acts of defendant which had no relation to the charge seems to come within the principle which allows the admission of this kind of testimony to establish a plan or scheme of a person to commit acts of this nature. Appellant pursued a common pattern in his method of operation. State v. Arradondo, 260 Minn. 512, 110 N.W.2d 469 (1961); Taylor v. State, 55 Ariz. 13, 97 P.2d 543 (1940). Wigmore on Evidence in Vol. 2, § 357 3rd ed. 1940, in a discussion concerning rape states:

"* * * The committing of a single previous rape or rape attempt, upon another woman may not in itself indicate such a design. * * * Nevertheless, a single previous act, even upon another woman, may, with other circumstances,

give strong indication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design.

"Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon character * * *, it may carry with it great significance as to a specific design or plan of rape. There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings."

See also State v. Dodson, 67 N.M. 146, 353 P.2d 364 (1960) holding, in a charge of contributing to the delinquency of a minor, that testimony of illicit acts with the minor prosecutrix at times other than those contained in the charge did not constitute error.

I dissent.